James A. FINCH and Tricia K. Finch, Plaintiffs-Appellants,

v.

SOUTHSIDE LINCOLN-MERCURY, INC., Defendant,

FORD MOTOR COMPANY, R. G. Singletary, S. D. Majercik and S. L. Griffin, Defendants-Respondents.

Court of Appeals

*No. 02–2618. Submitted on briefs May 14, 2003.—Decided May 20, 2004.*

2004 WI App 110

(Also reported in 685 N.W.2d 154.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Paul R. Norman* and *Sarah A. Zylstra* of *Boardman, Suhr, Curry & Field LLP*, Madison.

On behalf of the defendants-respondents, R.G. Singletary, S.D. Majercik and S.L. Griffin, the cause was submitted on the brief of *Gregory P. Seibold* of *Murphy Desmond, S.C.*, Madison.

On behalf of the defendant-respondent, Ford Motor Company, the cause was submitted on the brief of *Thomas J. Keiffer* of *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse, and *Kurt D. Williams* and *Stephen M. Bledsoe* of *Berkowitz Stanton Brandt Williams & Shaw, LLP*, Kansas City, Mo.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. James and Tricia Finch appeal the dismissal of their claims against Ford Motor Company and three of its employees who served as directors of Southside Lincoln-Mercury, Inc. The trial court concluded that certain language in the lease between the Finches and Southside absolved Ford,

725

Southside's controlling shareholder, and the three directors from any liability for the Finches' claims against them. The Finches contend that the court erred in dismissing their claims because the clause at issue did not bar their claims for breach of fiduciary duty, tortious interference with a contract, and violation of the Uniform Fraudulent Transfer Act, and that each of these claims was well pled in their amended complaint. We agree that the last two claims should not have been dismissed. Accordingly, we reverse the appealed order in part and remand for further proceedings on the tortious interference and UFTA claims.

## BACKGROUND

¶ 2. The trial court terminated this litigation at the pleading stage by granting motions to dismiss the Finches' complaint, from whose allegations we derive the following background facts. James Finch owned Finch's Southside Lincoln-Mercury, Inc., which in turn operated two motor vehicle dealerships in La Crosse and West Salem from 1994 until 1999 under franchise agreements with Ford Motor Company.[1] Finch and his wife, Tricia, own the land and buildings where the two dealerships operated. Representatives of Ford proposed in 1998 that Finch sell his corporation's Mercury and Lincoln dealership assets to Southside Lincoln-Mercury, Inc. (Southside), a Delaware "dealer development corporation" formed and controlled by Ford.[2]

---

[1] Finch also operated a Mazda dealership at the same locations under a dealer agreement with Mazda Great Lakes Distributors, Inc. No issues regarding Finch's Mazda dealership are implicated in this appeal.

[2] Ford described its "dealer development" program as being designed to make dealership opportunities available to individu-

¶ 3. Finch's corporation entered into an asset-purchase agreement with Southside in 1999. Southside agreed to purchase substantially all of the dealership's assets, including its franchise rights, which were relinquished to Ford so that Ford could, in turn, grant them to Southside. In conjunction with the sale of corporate assets, James and Tricia Finch entered into written leases with Southside for the two dealership locations. The La Crosse dealership facility lease was for a term of 120 months and required Southside to pay the Finches $17,000 per month, as well as to pay all real estate taxes, insurance, utilities, and maintenance expenses. The West Salem dealership facility lease was for a term of sixty months and obligated Southside to pay $7,000 per month, again in addition to all real estate taxes, insurance, utilities, and maintenance expenses. Ford also appointed three Ford employees (named as defendants-respondents in the caption) to serve as directors of Southside.

¶ 4. Southside ceased doing business in early 2001 and, according to the Finches, the corporation "transferred" its franchise rights to Ford for no value. The Finches assert that the franchise rights had a fair market value in excess of one million dollars. As a result of the business cessation and franchise transfer, Southside did not have sufficient remaining assets to pay its outstanding obligations, including its obligations to the

---

als who might not otherwise be able to afford the start-up costs of a dealership. The dealership entity, in this case, Southside, is incorporated as an independent corporation. Ford initially becomes the majority shareholder and the prospective future owner, the minority shareholder. As the dealership becomes profitable, the minority shareholder is encouraged to purchase shares from Ford, and if all goes as intended, he or she eventually becomes the sole owner of the dealership.

Finches under the two dealership leases. Southside informed the Finches that it was insolvent and intended to default on all future obligations under the leases.

¶ 5. The Finches sued Southside, Ford and the three directors, alleging claims of breach of fiduciary duty and intentional interference with a contract against both Ford and the directors, and a fraudulent transfer claim under Wis. Stat. § 242.05(1) (2001–02)[3] against Ford.[4] Ford, joined by the directors, moved to dismiss the Finches' claims on the basis of the following language contained in both dealership facility leases:[5]

Recourse limited to Tenant corporation

20. No recourse shall be had for payment of the rent, or performance of any other obligations of [Southside], or for any claim based on, or otherwise in respect of, this Lease, against any incorporator, stockholder, officer, director or employee, as such, past, present, or future, of [Southside] or of any successor corporation, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise, all such liability or claim of liability being, by execution of this Lease, and as part of the consideration for the execution hereof by [Southside] expressly waived and released.

---

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[4] The Finches' only claim against Southside was for breach of the leases. Further proceedings on the contract claim have been stayed pending the outcome of this appeal, to which Southside is not a party.

[5] The Finches generally refer to the language of paragraph 20 of the lease as "an exculpatory clause," while Ford and the directors refer to it as a "non-recourse provision." Our analysis does not depend on what label is applied to the language. We will refer to it in this opinion as simply "paragraph 20."

¶ 6. The trial court accepted the defendants' arguments and dismissed all claims against Ford and the directors. The Finches appeal, contending that: (1) the quoted language cannot be enforced to absolve Ford and the directors from tort liability for intentional or reckless acts; (2) if not void as against public policy, paragraph 20 is inapplicable to the claims the Finches pled; and (3) in the alternative, paragraph 20 is ambiguous as to its scope, thereby rendering dismissal of the Finches' claims at this stage improper. The Finches also contend that each of the dismissed causes of action were properly pled and must thus survive the defendants' dismissal motions.

## ANALYSIS

¶ 7. Ford and the directors moved to dismiss the Finches' complaint against them for failure to state a claim upon which relief can be granted. *See* WIS. STAT. § 802.06(2)(a)6. The trial court granted the motions and dismissed all claims against these defendants. On appeal, however, the directors contend that we should employ summary judgment methodology because the trial court considered a matter outside the pleadings (paragraph 20 in the Finch-Southside lease), thereby converting the motion to one for summary judgment. *See* § 802.06(2)(b) ("If on a motion asserting the defense . . . [of] failure of the pleading to state a claim upon which relief can be granted . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."). The directors further contend that the Finches were thus obligated, but failed, to file countering affidavits so as to place in dispute the parties' intent regarding the scope of paragraph 20.

¶ 8. The Finches referred to the lease in their complaint but did not attach or incorporate it in their pleading. Ford first brought paragraph 20 to the court's attention by attaching a copy of it to its motion to dismiss. Ford contended in its trial court brief that federal case law permits a court to consider a document attached to a motion to dismiss if the document is referred to in the plaintiff's complaint and is central to the plaintiff's claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Finches acceded to the court's consideration of the lease language, as did the directors. At no point, however, did the directors or any other party contend that the trial court must treat the motions to dismiss as summary judgment motions because it considered the lease language.

¶ 9. We note that when a court converts a motion to dismiss for failure to state a claim into a motion for summary judgment pursuant to Wis. Stat. § 802.06(2)(b), the court must notify the parties of its intent and provide them a reasonable opportunity to present material made pertinent by Wis. Stat. § 802.08. *CTI of Northeast Wisconsin, LLC v. Herrell*, 2003 WI App 19, ¶ 6, 259 Wis. 2d 756, 656 N.W.2d 794. This did not occur because, as we have noted, all parties were content to have the court consider the lease language in resolving the defendants' motions to dismiss for failure to state a claim. Because the directors joined Ford in relying on the lease language to support their motion to dismiss for failure to state a claim, we conclude they are

estopped from making arguments on appeal premised on the Finches' failure to file countering affidavits.[6]

██

¶ 10. Our review is thus of the granting of a motion to dismiss for failure to state a claim, a question of law that we decide de novo. *See Beloit Liquidating Trust v. Grade (Beloit II)*, 2004 WI 39, ¶ 17, 270 Wis. 2d 356, 677 N.W.2d 298. In our review, we, like the parties and the trial court have done, will treat the complaint as incorporating the language of the Finch-Southside lease. In examining the complaint, we are to liberally construe the pleadings and accept as true all facts pleaded by the plaintiff and all inferences that can reasonably be derived from those facts. *Id*. Dismissal at the pleading stage is appropriate only if it appears certain that under no circumstances can the plaintiff recover. *Id*.

---

[6] We emphasize that we are *not* adopting the federal precedents relied upon by Ford in the trial court when submitting the lease language in support of its motion to dismiss. Whether a court may consider documents referred to, but not attached to or incorporated in, a complaint when deciding a motion to dismiss without converting the motion to one for summary judgment has not been argued before us. We conclude only that the directors are estopped from arguing that the trial court granted summary judgment after they joined Ford in relying on the lease language to support their motion to dismiss and prevailed in that position. *See State v. Gove*, 148 Wis. 2d 936, 944, 437 N.W.2d 218 (1989) (holding that the doctrine of judicial estoppel recognizes that "[i]t is contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation which may be advantageous, and then after the court maintains that position, argue on appeal that the action was error.").

## I.

¶ 11. The Finches' argument against allowing paragraph 20 to bar their claims against Ford and the directors rests primarily on RESTATEMENT (SECOND) OF CONTRACTS § 195(1), which provides that "[a] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." *Id*. They contend that the Restatement principle means that paragraph 20 cannot be enforced, at least insofar as it attempts to immunize any parties from liability for "harm caused intentionally or recklessly." The directors and Ford argue, however, that Wisconsin law distinguishes between personal and economic injury and voids "exculpatory clauses" only in personal injury cases, and then only where the injured party would be deprived of any remedy if the clause was upheld. They maintain that, because the language at issue here bars recovery for only economic injury and is contained in a lease bargained between sophisticated commercial parties, we must give effect to the language and uphold the dismissal of all of the Finches' claims against them.

¶ 12. Before considering whether paragraph 20 is unenforceable against the Finches' claims on public policy grounds, we must first determine whether any of the Finches' three claims against these defendants fall within its reach. If the language of paragraph 20 unambiguously does not apply to the Finches' claims, as they contend is the case, then the enforceability of paragraph 20 becomes irrelevant. We conclude that two of the Finches' claims, those alleging a breach of fiduciary duty and violation of the UFTA, are not barred by paragraph 20 of the Finch-Southside lease.

¶ 13. Paragraph 20 precludes the Finches from having any "recourse ... against any ... stock-

732

holder . . . [or] director" of Southside "for payment of the rent, or performance of any other obligations of [Southside], or for any claim based on, or otherwise in respect of, this Lease . . . whether by virtue of any constitution, statute or rule of law." The term "recourse" carries a lay definition of "access or resort to a person or thing for help or protection." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1613 (2d ed. 1987). In legal contexts (outside of the law of banking and negotiable instruments, where more specialized meanings apply), the term generally refers to "[e]nforcement of, or a method for enforcing, a right." BLACK'S LAW DICTIONARY 1280 (7th ed. 1999). The most obvious effect of paragraph 20, therefore, is to negate any potential claim that Ford, as the principal shareholder of Southside, or any director of Southside, had either explicitly or implicitly guaranteed Southside's obligations under the lease. That is, as to the payment of rent or other tenant obligations under the lease, the Finches' only "method for enforcing" their rights was to pursue Southside itself, and they could not "resort to" Ford or the directors for any "help or protection" regarding Southside's obligations as a tenant.

¶ 14. As we will discuss more fully below, the Finches' breach of fiduciary duty and fraudulent transfer claims are premised on actions allegedly taken by the directors and Ford to divest Southside of a valuable corporate asset, thereby rendering the dealership corporation unable to pay its debts. In pursuing these claims, the Finches are not seeking to enforce any rights they possess as Southside's landlord. They rely, instead, on their status as creditors of an insolvent corporation. The only link between the lease and these two causes of action is that present and future unpaid

rent is what renders the Finches unpaid creditors of the allegedly insolvent corporation, Southside. Thus, Southside's obligations under the lease may become relevant in determining the amount of the Finches' damages,[7] but they play no part in determining the liability of these defendants, that is, whether the defendants breached any fiduciary duties to the Finches or whether Ford was the recipient of a fraudulent transfer under Wis. Stat. ch. 242.

¶ 15. Ford and the directors, however, point to the language in paragraph 20 that applies its provisions to "any claim based on, or otherwise in respect of, this Lease." The defendants claim that this broad language was unambiguously intended to apply to claims such as those before us now. Ford, for example, argues:

> The provision waives "all liability" from "any constitution, statute or rule of law." Such broad language was required because a stockholder cannot be held liable for a corporation's breach of its lease. Any claim against Ford as the stockholder for Southside's breach of its lease therefore would necessarily involve some theory

---

[7] The Finches' amended complaint seeks damages against Southside, and only Southside, for "damages caused by Southside's existing and anticipatory breach of the La Crosse and West Salem leases." The damages sought against Ford on the fraudulent transfer claim are "an amount equal to the value of the Mercury/Lincoln Franchise Rights at the time they were transferred by Southside to Ford . . . or the amount necessary to satisfy the Finches' claim against Southside under the La Crosse and West Salem leases, whichever is less." On their breach of fiduciary duties claims against Ford and the directors, the Finches seek damages "for the actual pecuniary loss caused to the Finches by Ford's and the Southside Directors' breach of their fiduciary duties to the Finches, as unsecured creditors of Southside."

**other than** breach of the lease. Waiving such claims was precisely what the parties contemplated with the non-recourse provision.

The directors similarly contend that the "non-recourse provisions would have been unnecessary and redundant if they were not intended to do more than simply reflect that Southside was the contracting entity."

¶ 16. We are not persuaded, however, that the language, "any claim based on, or otherwise in respect of, this Lease," is so all-encompassing that it immunizes Ford and the directors from liability for any and all acts, no matter how tenuously related to Southside's obligations under the lease. An interpretation construing the reach of paragraph 20 expansively would call into question the enforceability of the language on public policy grounds. *See Dobratz v. Thompson*, 161 Wis. 2d 502, 520, 468 N.W.2d 654 (1991) (noting that courts "will disfavor any exculpatory contract that is broad and general in its terms" and "will closely scrutinize an exculpatory contract and construe it strictly against the defendants.").

¶ 17. The Finches' claims of breach of fiduciary duties and fraudulent transfer against the directors and Ford are an attempt to recover money of which the Finches were allegedly wrongfully deprived because of allegedly tortious acts or other misconduct of the defendants, actions that were independent of and unrelated to Southside's breach of its obligations under the lease. Although success on their claims for breach of fiduciary duties or a fraudulent transfer may result in the Finches being able to recover amounts owed them under the leases with Southside, the fiduciary duties and statutory obligations on which these claims are based derive from sources *other* than the leases. Accord-

735

ingly, we conclude that the Finches' allegation that Ford and the directors breached fiduciary duties and transferred assets in violation of Wɪs. Sᴛᴀᴛ. § 242.05(1) are not "claim[s] based on, or otherwise in respect of" the lease.

¶ 18. The Finches' tortious interference with contract claim also involves allegedly wrongful conduct independent of a breach of the leases, but the claim is much more closely tied to Southside's obligations under the leases. Unlike the breach of fiduciary duties and fraudulent transfer claims, which the Finches bring as unsecured creditors of an insolvent corporation, the tortious interference claim rests squarely on the Finches' contractual relationship with Southside. To establish the defendant's liability for tortious interference, the Finches must prove the existence of the contract and show precisely how Ford or the directors wrongfully caused Southside not to perform its contractual obligations.[8] We therefore conclude that this cause of action is a "claim based on, or otherwise in respect of" the Finch-Southside leases. The tortious interference claim is plainly an attempt by the Finches to collect from Southside's directors and controlling shareholder for their actions that resulted in Southside's breach of the leases, and it is thus barred by the language of

---

[8] The elements of a claim for tortious interference with a contract are as follows: "(1) the plaintiff must have had· a contract or a prospective contractual relationship with a third party; (2) the defendant must have interfered with that relationship; (3) the interference by the defendant must have been intentional; (4) there must be a causal connection between the interference and damages; and (5) the defendant must not have been justified or privileged to interfere." *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F. Supp. 1130, 1156 (E.D. Wis. 1995).

paragraph 20 unless, as the Finches assert, the provision may not be applied to this claim for reasons of public policy, a question we next address.

¶ 19. "Exculpatory clauses" are not favored by the law because they tend to allow conduct that falls below acceptable standards of care. *Richards v. Richards*, 181 Wis. 2d 1007, 1015, 513 N.W.2d 118 (1994). An exculpatory clause is not, however, automatically void and unenforceable as contrary to public policy. *Id.* Rather, a court must closely examine whether such an agreement violates public policy, strictly construing it against the party seeking to rely on it. *Id.*

¶ 20. Ford and the directors are correct that the cases relied upon by the Finches, *Keller v. Lloyd*, 180 Wis. 2d 162, 509 N.W.2d 87 (Ct. App. 1993), *Dobratz v. Thompson*, 161 Wis. 2d 502, 468 N.W.2d 654 (1991), and *Merten v. Nathan*, 108 Wis. 2d 205, 321 N.W.2d 173 (1982), are all personal injury cases involving consumer contracts. Moreover, the Finches have not cited, and we have not located, any Wisconsin decision expressly voiding an exculpatory clause as against public policy solely on the basis that the clause attempted to exempt tort liability for harm caused intentionally or recklessly. Wisconsin courts have regularly recognized this principle,[9] however, and we conclude it is applicable here,

---

[9] *See Richards v. Richards*, 181 Wis. 2d 1007, 1017–18, 513 N.W.2d 118 (1994) (refusing to enforce exculpatory clause on grounds that, among other reasons, its extremely broad language "purports to excuse intentional, reckless, and negligent conduct"); *Kellar v. Lloyd*, 180 Wis. 2d 162, 183, 509 N.W.2d 87 (1993) ("Wisconsin cases have acknowledged that an exculpatory contract exempting a party from tort liability for harm caused intentionally or recklessly is void as against public policy."); *Dobratz v. Thompson*, 161 Wis. 2d 502, 515–16, 468

where the language of the exculpatory clause[10] is asserted to bar any liability on the part of Ford and the directors for intentionally or recklessly wrongful conduct.

¶ 21. We find the reasoning in *RepublicBank Dallas, N.A. v. First Wisconsin Nat'l Bank of Milwaukee*, 636 F. Supp. 1470 (E.D. Wis. 1986), both persuasive and on point. In *RepublicBank*, the District Court refused to uphold a liability disclaimer in a commercial agreement between two large banks barring economic loss claims based on an alleged intentional misrepresentation. The court recognized both that Wisconsin had "endorsed the position of the RESTATEMENT (SECOND) OF CONTRACTS that

N.W.2d 654 (1991) (citing RESTATEMENT (SECOND) OF CONTRACTS § 195 (1979) with approval); *Trainor v. Aztalan Cycle Club, Inc.*, 147 Wis. 2d 107, 115, 432 N.W.2d 626 (Ct. App. 1988) (recognizing that "the supreme court has, on several occasions, quoted passages from the Restatement which include the statement that [exculpatory] contracts are invalid to the extent they attempt to excuse intentional or reckless conduct"); *Discount Fabric House of Racine, Inc. v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 595, 345 N.W.2d 417 (1984) (citing RESTATEMENT (SECOND) OF CONTRACTS § 195 (1979) with approval); *Arnold v. Shawano County Agric. Soc'y*, 111 Wis. 2d 203, 210–11, 330 N.W.2d 773 (1983) (citing RESTATEMENT (SECOND) OF CONTRACTS § 195 (1979) with approval), *overruled on other grounds, Green Springs Farms v. Kersten*, 136 Wis. 2d 304, 317, 401 N.W.2d 816 (1985); and *Merten v. Nathan*, 108 Wis. 2d 205, 212–13, 321 N.W.2d 173 (1982) (citing RESTATEMENT (SECOND) OF CONTRACTS § 195 (1979) with approval). *See also Rose v. National Tractor Pullers Ass'n, Inc.*, 33 F. Supp. 2d 757, 766 (W.D. Wis. 1998) (recognizing that the Wisconsin Supreme Court "has indicated that an exculpatory contract cannot absolve reckless conduct").

[10] "No recourse shall be had . . . for *any claim* based on, or otherwise in respect of, this Lease, against any . . . stockholder . . . [or] director . . . *all such liability* . . . being . . . expressly waived and released." (Emphasis added.)

738

exculpatory clauses are unenforceable on public policy grounds where the alleged harm is caused intentionally or recklessly," and that there is no Wisconsin authority limiting this rule to cases involving consumers or parties of unequal bargaining power. *Id*. at 1473. The court also distinguished between clauses purporting to exculpate parties from negligent conduct and those purporting to exculpate parties from reckless or intentional conduct. *Id*. The former are valid provided that the parties' intent is clear and public policy is not otherwise violated. *Id*. at 1474.

¶ 22. We see no reason why the Restatement principle should not be applied here, notwithstanding the fact that, as the defendants argue, our refusal to enforce paragraph 20 to preclude the Finches' tortious interference with contract claim impinges on the freedom of these "sophisticated commercial parties" to allocate risk by contract. The "tension between the principles of contract and tort law" are evident whenever a court considers the enforceability of an exculpatory provision in a contract. *See Richards*, 181 Wis. 2d at 1016. The fact that one party to an exculpatory contract lacks sophistication in business matters or possesses unequal bargaining power provides a separate basis for voiding an exculpatory clause. *See, e.g., Discount Fabric House of Racine, Inc. v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 600, 345 N.W.2d 417 (1984). We conclude, however, that this does not mean that the absence of such disparities precludes a court from refusing to enforce an exculpatory provision on other grounds.

¶ 23. Rather, we conclude that, under the Restatement rule, as embraced by the Wisconsin Supreme

Court in *Merten*, 108 Wis. 2d at 212–13, and subsequent cases (see footnote 9), an exculpatory clause, though otherwise valid as applied to some causes of action, cannot operate to relieve a party from the consequences of intentional or reckless conduct. The rule is grounded in sound public policy for, as noted in the Restatement, the law of torts imposes standards of conduct for the protection of others against unreasonable risk of harm, and a party should not be able to exempt itself by contract from liability for harm that it intentionally or recklessly causes. RESTATEMENT (SECOND) OF CONTRACTS § 195 cmt. a (1979).

¶ 24. As we have noted (see footnote 8), tortious interference with a contract is an intentional tort inasmuch as the interference complained of must be alleged and proven to be intentional. Accordingly, paragraph 20 is unenforceable against the Finches' claim for tortious interference with their leases with Southside. Because all three of the Finches' causes of action thus survive the language of paragraph 20, we next address other asserted infirmities requiring the dismissal of each claim.

## II.

¶ 25. The trial court did not analyze whether the Finches' complaint properly alleged the three claims against Ford and the directors because the court concluded that the language of paragraph 20 was effective to bar them all. Because our review of the determination of a motion to dismiss for failure to state a claim is de novo, however, there is no impediment to our considering the defendants' remaining arguments in support of their motions to dismiss. We first address the

Finches' claim that, by transferring Southside's franchise rights to Ford for no value, the directors and Ford, as Southside's controlling shareholder, breached fiduciary duties owed to the Finches as unsecured creditors of an insolvent corporation.

¶ 26. A threshold issue is presented—whether Delaware or Wisconsin law should determine the viability of the Finches breach of fiduciary duties claim. The Finches, perceiving Delaware law to be more favorable in establishing the viability of their fiduciary duty claims against both Ford and the directors, urge us to apply the law of Delaware, the state of Southside's incorporation. The defendants argue that Wisconsin law should apply to this dispute because Southside's business operations were exclusively located here, as were its dealings with the Finches and the leased real estate. These connections to Wisconsin, in the defendants' views, far outweigh the single tie to Delaware as the state of Southside's incorporation.

■

¶ 27. After the briefing of this appeal was completed, we decided an appeal that addressed this very choice of law issue. We concluded that, under the "internal affairs doctrine" and the "*Heath* factors,"[11] the

---

[11] The internal affairs doctrine is a conflict of laws rule that states that in disputes involving a corporation and its relationships with shareholders, directors, officers, or agents, the law to be applied is the law of the state of incorporation. BLACK'S LAW DICTIONARY 820 (7th ed. 1999). Wisconsin has identified five factors that may be applied to resolve choice of law disputes: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Heath v. Zellmer*, 35 Wis. 2d 578, 596, 151 N.W.2d 664 (1967).

law of the state of incorporation should govern a breach of fiduciary claim brought by a committee of creditors against officers and directors of a Delaware corporation having its principal place of business in Wisconsin. *See Beloit Liquidating Trust v. Grade (Beloit I)*, 2003 WI App 176, ¶¶ 29–38, 266 Wis. 2d 388, 669 N.W.2d 2d 232, *reversed*, 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298. The parties submitted supplemental letter briefs on the application of our analysis in *Beloit I* to the present facts. The supreme court accepted review of that case, however, and it reversed our choice of law determination. *See Beloit II*, 2004 WI 39, ¶¶ 17–32. The parties once again provided supplemental letter briefs. Because we now have the benefit of the supreme court's very recent choice of law analysis in a closely analogous dispute, as well as the parties' input on how *Beloit II* should be applied here, we proceed directly to a determination of the choice of law issue under the *Beloit II* holding.

¶ 28. The supreme court explained in *Beloit II* that Wis. Stat. § 180.1704[12] is "helpful in discerning our legislature's intent with respect to corporations and choice of law principles." *Id.*, 23. The court concluded that:

> Section 180.1704 puts all corporations on notice that, when transacting business in Wisconsin, they are subject to Chapter 180. Given this clear statutory language, and Wisconsin's failure to adopt the internal affairs doctrine [see footnote 10], either by statute or through case law, we conclude that the language of § 180.1704 supports the holding that Wisconsin law

---

[12] Wisconsin Stat. § 180.1704 provides, in relevant part, that "this chapter applies to all foreign corporations transacting business in this state on or after January 1, 1991."

742

should be applied in determining whether . . . directors or officers breached their fiduciary duty to . . . creditors.

*Id.* The court also went on to consider "two applicable tests when deciding which forum's laws apply." *Id.*, ¶ 24. The first is " 'whether the contacts of one state to the facts of the case are so obviously limited and minimal that application of that state's law constitutes officious intermeddling.' " *Id.* (citation omitted). The second is an examination of the five "*Heath* factors" (see footnote 11). *Id.*, ¶ 25.

¶ 29. We conclude that WIS. STAT. § 180.1704 and the two tests cited in *Beloit II* dictate that we apply Wisconsin law in the present litigation. Southside's only contact with Delaware was that it was incorporated there. Southside did all of its business in Wisconsin, the lease agreements with the Finches were entered into here, and they deal with Wisconsin real estate. Although it is true that Southside's controlling shareholder and its directors are from outside Wisconsin, that fact does not strengthen Southside's ties to Delaware (Ford's principal place of business is in Michigan, and the directors reside in Michigan and Missouri). There appears to be no connection between Southside and Delaware other than the fact of incorporation, and "application of Delaware law in this case would constitute officious intermeddling with the laws of Wisconsin." *See id.*, ¶ 24.

¶ 30. Finally, the "*Heath* factors" (see footnote 11) also weigh in favor of applying Wisconsin law. This dispute involves business conducted in Wisconsin, and WIS. STAT. § 180.1704 "is clear on its face and puts corporations on notice that, if they choose to transact business in this state, they will be subject to Wisconsin

law," thereby enhancing the predictability of results. *Id.*, ¶ 26. For the same reason that Wisconsin law is preferred under the test for "officious intermeddling," interstate order is maintained by applying the law of Wisconsin because our state has more significant contacts with Southside than does Delaware. *See id.*, ¶ 27. Next, application of our own law, as opposed to the law of a foreign jurisdiction, will always simplify our judicial task, except where Wisconsin law is complex or uncertain as compared to that of the other jurisdiction, *Heath v. Zellmer*, 35 Wis. 2d 578, 597, 151 N.W.2d 664 (1967), and "Wisconsin law regarding whether officers and directors owe a fiduciary duty to a corporation's creditors is not complex or unmanageable," *Beloit II*, 2004 WI 39, ¶ 28. Wisconsin is the forum state and our governmental interests are advanced by applying Wisconsin law to disputes litigated here inasmuch as "it is the duty of a Wisconsin court to identify and effectuate Wisconsin policies." *Heath*, 35 Wis. 2d at 597. Finally, "Wisconsin laws regarding a corporation's duty to its creditors are not obsolete or senseless," *Beloit II*, 2004 WI 39, ¶ 31, and we may thus perceive it as the "better law." *Heath*, 35 Wis. 2d at 598.

¶ 31. Therefore, in our review of whether the Finches' complaint states viable claims against Ford and the directors for breaches of fiduciary duties, we will consult and apply Wisconsin law. After *Beloit II*, there can be little dispute that Wisconsin courts recognize a fiduciary duty owed by the officers and directors of a corporation to maximize the value of the corporation's remaining assets for the benefit of its unsecured creditors once the corporation is both (1) insolvent and (2) no longer "a going concern." *See Beloit II*, 2004 WI 39, ¶¶ 34–39; *McGivern v. Amasa Lumber*

Co., 77 Wis. 2d 241, 254, 252 N.W.2d 371 (1977). We conclude that the Finches' complaint, whose allegations we must take as true, states a claim for breach of fiduciary duty against the directors: it asserts that Southside "was insolvent or on the brink of insolvency" and had "ceased doing business" when the directors authorized the transfer of the franchise rights for no value.

¶ 32. The Finches make the same allegations in their breach of fiduciary duty claim against Ford, Southside's controlling shareholder. As Ford points out, however, the Finches provide no support in Wisconsin law for the proposition that a corporation's controlling shareholder owes a fiduciary duty to unsecured creditors of the corporation under these, or any other, circumstances. While we might not go so far as Ford's assertion that permitting the Finches to go forward on their claim against it for breach of fiduciary duties would "turn corporate law on its head," we acknowledge that the notion gives us pause. *See Consumer's Co-op of Walworth County v. Olsen*, 142 Wis. 2d 465, 475, 419 N.W.2d 211 (1988) (noting Wisconsin's "unwavering adherence to the general principle of shareholder non-liability" for corporate debts). We conclude, however, that the Finches' breach of fiduciary duties claims suffer from a separate infirmity, one which infects its claims against the directors as well: the Finches lack standing as individual creditors to pursue these claims under Wisconsin law.

¶ 33. In Wisconsin,

[a]n action by a creditor . . . under the general equitable powers of the court is brought on behalf of the corporation for the benefit of all of its creditors, any amounts

745

recovered to be restored to the corporation or to such assignee or other person who has a right thereto in lieu of the corporation. If the directors' breach of their duties has caused a loss to the corporation, the liability of the directors is deemed to be an asset of the corporation. It is only if the creditor suffers a single and exclusive injury resulting from a direct tort of the director or officer that the creditor, in his or her own right, may sue the director or officer.

*McGivern*, 77 Wis. 2d at 257–59 (footnotes and citations omitted). The supreme court explained in a footnote that an "action on behalf of all creditors avoids multiplicity of suits and provides an orderly procedure by which relief can be obtained for all aggrieved creditors rather than the lucky few who prosecute first." *Id*. at 258 n.10.

¶ 34. The Finches argue that we should not treat the quoted passage from *McGivern* as binding because it dealt with statutory provisions that have been repealed and is, moreover, "dicta." We disagree on both points. We first note that, in discussing the "standing" issue in *McGivern*, the court referred not only to actions brought under the repealed statutory provisions, but also to those brought "under the general equitable powers of the court." *Id*. at 258. We also do not view the court's discussion of standing as dicta but as an alternative rationale for the court's holding. *See id*. at 255–56 ("There is an additional difficulty with [the plaintiff]'s position here. Even where it could be said that in some sense a fiduciary obligation existed to creditors generally, the issue remains as to who has the right to sue for losses due to the breach of duty."). The applicability of the court's conclusion on standing to the facts before it was clearly stated:

746

[The plaintiff] was suing on her own behalf—not on behalf of [the corporation] or the creditors .... [H]er attempt to hold [a director and an officer] liable to her as a fiduciary must fail. [The plaintiff] claims that a general fiduciary obligation is owed by the directors and officers of a solvent corporation to each creditor personally. No such personal duty exists.

*McGivern*, 77 Wis. 2d at 260. In short, we conclude that the court's answer to the question of who may sue to recover for an alleged breach of a director's fiduciary duty owed to creditors of the corporation is as central to the court's holding in *McGivern* as is its conclusion regarding the absence of a duty unless the corporation is insolvent and no longer a "going concern."

¶ 35. Furthermore, we note that in our *Beloit I* decision we relied on the standing discussion in *McGivern* to resolve the question of "who could sue to recover for any breach" of the duty owed by officers and directors of an insolvent corporation to its creditors. We concluded that "the mechanism by which creditors, as a group for the benefit of the bankruptcy estate, could seek recompense for the actions of the defendants that allegedly caused harm to the creditors as a group" was properly employed in that case because the plaintiff was a committee appointed by the bankruptcy court to sue the directors and officers on behalf of the corporation. *Beloit I*, 266 Wis. 2d 388, ¶ 42. Although the supreme court reversed our decision in *Beloit I*, it was for other reasons,[13] and the court did not comment on our

---

[13] The supreme court concluded that we had erred in permitting the action to go forward because, although Beloit Corporation may have been insolvent at the time of the actions complained of, it remained "a going concern" during the relevant time period. *Beloit Liquidating Trust v. Grade (Beloit II)*, 2004 WI 39, ¶ 42, 270 Wis. 2d 356, 677 N.W.2d 298.

discussion of the standing issue. More importantly, the supreme court placed considerable reliance on the *McGivern* decision to "solidify" its conclusions regarding the necessary prerequisites for creditors' suits against a corporation's officers and directors for breaches of fiduciary duties. *Beloit II*, 2004 WI 39, ¶ 38. Although the supreme court did not expressly endorse the *McGivern* "standing" analysis in *Beloit II*, as we did in *Beloit I*, the court's recent reliance on *McGivern* persuades us that it remains a valid exposition of Wisconsin law applicable to the issue before us.

¶ 36. In summary, the trial court did not err in dismissing the Finches' breach of fiduciary duty claims against the directors and Ford. In their breach of fiduciary duties claims, the Finches allege no misconduct by the defendants directed toward them personally but rely solely on their status as unsecured creditors of the corporation. The complaint alleges neither an intent on the Finches' part to seek redress on behalf of all unsecured creditors generally, nor facts that would establish their authority to pursue the fiduciary duty claims in a representative capacity. The claims brought solely on behalf of the Finches as an individual creditor of Southside cannot go forward.

### III.

¶ 37. As we have noted (see footnote 8), the elements of tortious interference with a contract include a showing that the defendant was not justified or privileged to interfere with the contract in question. Both Ford and the directors assert that the Finches' tortious interference claim must fail because they failed to allege facts sufficient to establish that either Ford or the directors were not justified or privileged in causing

Southside to breach its lease with the Finches. As the supreme court has explained:

> If a director or managing officer acting bona fide procures, causes or participates in authorizing a breach of contract between his company and a third person, he may well be regarded as protected only by a conditional privilege, which will be destroyed by a wrongful motive. This conditional privilege of corporate representatives should be recognized in the interest of freedom in exercising discretion to protect the best interests of the corporation which they represent.

*Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 40, 253 N.W.2d 493 (1977) (quoting H. BALLANTINE, ON CORPORATIONS, § 112, at 275–76 (rev. ed. 1946)). A similar privilege is accorded majority shareholders of a corporation. *See Mendelson v. Blatz Brewing Co.*, 9 Wis. 2d 487, 491–93, 101 N.W.2d 805 (1960).

¶ 38. "The burden of proving lack of privilege, however, is generally not ascribed to the plaintiff. Rather, proof of intentional interference with the existing contractual relations of another is sufficient to establish liability, shifting the burden of proving the justification for such interference upon the defendant . . . ." *Chrysler Corp. v. Lakeshore Commercial Fin. Corp.*, 389 F. Supp. 1216, 1221 (E.D. Wis. 1975); *see also* WIS JI—CIVIL 2780 (2003) (burden of proof as to whether defendant was privileged or justified to interfere with contractual relationship is on the defendant). We therefore conclude that, to survive a motion to dismiss, it is not necessary for a plaintiff to allege facts sufficient to establish the *absence* of privilege or justification. Rather, it is enough to assert that the act or acts constituting intentional interference was, in fact, not privileged, which the Finches have done.

749

¶ 39. The Finches alleged in their complaint that Ford and the directors' "intentional interference" with the Southside-Finch lease "was improper and not privileged." Additionally, it may reasonably be inferred from the Finches' allegations that Ford and the directors, who were Ford employees, caused Southside to transfer to Ford franchise rights worth "in excess of $1,000,000," in order to confer financial benefits on Ford to the detriment of the Finches' rights as Southside's landlord, an arguably improper motive. *Cf. Lorenz v. Dreske*, 62 Wis. 2d 273, 287, 214 N.W.2d 753 (1974) (holding that a complaint is sufficient if it alleges "that the act of procuring a breach of contract was done with an improper motive").[14]

¶ 40. Ford argues, however, that it derived no benefit from the cessation of Southside's business ("Ford had no interest in the destruction of the Finches' business . . . .") and that the surrender of Southside's franchise due to its cessation of business was authorized under the franchise agreement ("Ford could have terminated their franchise rights to protect their contractual rights as franchisor."). We conclude that Ford's assertions rely on facts that are not of record at this stage of the litigation.[15] It may well be that Ford and the directors can establish, on a motion for summary judgment or at trial, that they indeed acted within the

---

[14] We note that the *Lorenz* decision predates the adoption of Wisconsin's "notice pleading" rule, WIS. STAT. § 802.02, which still requires a complaint to contain "a statement of the general factual circumstances in support of the claim presented," but "less particularity is required under this statute than under the previous rule. *See* Judicial Council Committee's Note, 1974, WIS. STAT. ANN. § 802.02 (West 1994).

[15] The Ford-Southside franchise agreement, for example, is not in the record.

conditional privilege recognized by Wisconsin law which permits corporate directors and majority shareholders to act in ways that cause a corporation's contracts with third parties to be breached. We cannot conclude at the pleading stage, however, that there are no circumstances under which the Finches will be able to prevail. *See Hartridge v. State Farm Mut. Auto. Ins. Co.*, 86 Wis. 2d 1, 4–5, 271 N.W.2d 598 (1978) (noting that dismissal, at the pleading stage, is appropriate only if it is clear that under no circumstances can the plaintiff recover).

¶ 41. We also conclude that the Finches' complaint properly alleges the remaining elements for a tortious interference with contract claim. The amended complaint alleges the existence of a contract between themselves and a third party, Southside. It alleges that both the directors and Ford intentionally interfered with that relationship by causing Southside to cease doing business and to transfer the dealership franchise rights to Ford for no value. Finally, the amended complaint alleges that the defendants' actions resulted in Southside's insolvency which, in turn, caused the Finches to suffer pecuniary loss in the form of unpaid rents due under the leases. In short, the Finches have adequately pled a cause of action against both the directors and Ford for intentional interference with a contract, and the trial court erred in dismissing this cause of action.

IV.

¶ 42. The Finches' final claim is that the transfer of the franchise rights to Ford for no value violated Wisconsin's Uniform Fraudulent Transfer Act, WIS.

751

STAT. § 242.05(1).[16] Ford did not argue to the trial court, in support of its motion to dismiss, that the Finches had failed to state a claim under UFTA, relying instead on the argument that paragraph 20 of the lease barred this claim. A review of both Ford's and the Finches' trial court briefs reveals no discussion of the § 242.05(1) claim beyond whether it was barred by the language of paragraph 20. The general rule is that issues not presented to the trial court will not be considered for the first time on appeal, *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997), and the Finches ask us to deem the issue waived. The waiver rule, however, generally applies only to appellants, and we will usually permit a respondent to employ any theory or argument on appeal that will allow us to affirm the trial court's order, even if not raised previously. *See State v. Holt*, 128 Wis. 2d 110, 124–25, 382 N.W.2d 679 (Ct. App. 1985).

¶ 43. Ford's basic argument is that the rights it granted Southside under the franchise agreement do not constitute an "asset," and that Southside's relinquishment of those rights was not a "transfer," within the meaning of WIS. STAT. ch. 242. Specifically, Ford asserts that it "had the right to terminate Southside's franchise rights and Southside could not transfer those rights without Ford's approval." As with the defendant's arguments regarding their asserted privilege to cause Southside to breach its lease with the Finches, however, Ford's arguments cannot be evaluated at this stage of

---

[16] WISCONSIN STAT. § 242.05(1) provides, in relevant part, that "[a] transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time. . . ."

the litigation. The franchise agreement is not of record, and notwithstanding the general principles of franchise law on which Ford seeks to rely, a determination whether the agreement created a transferable asset within the meaning of the UFTA requires an examination of the rights and responsibilities of the parties under the franchise agreement.

¶ 44. We are thus not convinced, based solely on the Finches' pleading, that under no circumstances can they recover on this claim. Accordingly, we conclude the trial court erred in dismissing it.

## CONCLUSION

¶ 45. For the reasons discussed above, we affirm the appealed order insofar as it dismissed the Finches' claims against the directors and Ford for breach of fiduciary duties. We reverse the dismissal of the tortious interference with contract claim against the defendants and the UFTA claim against Ford. We remand to the circuit court for further proceedings on these claims.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.