COURT OF APPEALS
DECISION
DATED AND FILED

**December 28, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP372**

STATE OF WISCONSIN

Cir. Ct. No. **2020SC520**

IN COURT OF APPEALS
DISTRICT III

WISCONSIN REAL ESTATE CO. LLC,

    PLAINTIFF-RESPONDENT,

V.

CHARLES W. HUELSBECK,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Shawano County: KATHERINE SLOMA, Judge. *Reversed*.

¶1 STARK, P.J.[1] Charles Huelsbeck appeals a money judgment entered against him and in favor of Wisconsin Real Estate Co. LLC ("WREC"). Following a bench trial, the circuit court determined that WREC was entitled to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

collect a commission from Huelsbeck under the terms of the parties' vacant land listing contract because a prospective buyer had accepted Huelsbeck's counteroffer for the purchase of the listed property, which created an "enforceable contract" for the sale the property.

¶2 Huelsbeck argues that the buyer's acceptance of the counteroffer did not create an enforceable contract because the buyer signed the counteroffer using an electronic signature, and Huelsbeck never consented to the use of electronic signatures. WREC disagrees and asserts that the buyer's acceptance of the counteroffer created an enforceable contract, despite the buyer's use of an electronic signature. In the alternative, WREC argues that it was entitled to collect a commission under a different provision of the listing contract because it produced a ready, willing and able buyer.

¶3 We conclude that because Huelsbeck never consented to the use of electronic signatures, the buyer's acceptance of Huelsbeck's counteroffer did not create an enforceable contract for the sale of the listed property. Furthermore, the evidence introduced at trial shows that WREC was not entitled to a commission under the "ready, willing and able buyer" provision of the listing contract. We therefore reverse the circuit court's judgment in favor of WREC.[2]

---

[2] Huelsbeck also argues that we should reverse the circuit court's judgment because: (1) WREC breached the listing contract by representing both Huelsbeck and the prospective buyer; and (2) WREC's complaint failed to state a claim on which relief could be granted because it did not allege that either WREC or its owner was a licensed broker or salesperson. Because we reverse on other grounds, we need not address these arguments. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

## BACKGROUND

¶4 In April 2020, Huelsbeck and WREC—by its owner, Scott Wessel— entered into a vacant land listing contract. The listing contract granted WREC the exclusive right to sell twenty acres of hunting land that Huelsbeck owned in Shawano County ("the Property") at a list price of $100,000. The listing contract provided that WREC's commission would be the greater of seven percent of the selling price or $2,500. As relevant here, the listing contract further provided that the commission

> shall be earned if, during the term of this Listing:
>
> 1) Seller sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property;
>
>  ….
>
> 5) A ready, willing and able buyer submits a bona fide written offer to Seller or [WREC] for the Property at, or above, the list price and on substantially the same terms set forth in this Listing and the current WB-13 Vacant Land Offer to Purchase, even if Seller does not accept the buyer's offer. A buyer is ready, willing and able when the buyer submitting the written offer has the ability to complete the buyer's obligations under the written offer.

¶5 On May 15, 2020, David Maltbey signed an offer to purchase the Property for $90,000. Maltbey hand-signed the offer to purchase, which was drafted by Wessel. The final page of the offer to purchase bears a notation stating

3

that Wessel presented it to Huelsbeck on May 15, 2020. Huelsbeck rejected the offer to purchase.[3]

¶6      On May 17, 2020, Maltbey electronically signed a counteroffer to his own initial offer to purchase the Property. Again, the counteroffer was drafted by Wessel. It included a purchase price of $95,000. Wessel presented the counteroffer to Huelsbeck on May 19, 2020. The same day, Huelsbeck responded with his own counteroffer, also drafted by Wessel and hand-signed by Huelsbeck, which listed a purchase price of $97,500. Maltbey electronically signed Huelsbeck's counteroffer later that day. The counteroffer incorporated "[a]ll terms and conditions" set forth in Maltbey's original offer to purchase.

¶7      Huelsbeck ultimately decided not to proceed with the sale of the Property to Maltbey.[4] Maltbey's earnest money was returned to him, and he did not seek to enforce the sale. However, in October 2020, WREC filed the instant small claims lawsuit against Huelsbeck, asserting that it was entitled to collect a commission under the provision of the listing contract stating that a commission is earned if the seller "sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property."

¶8      The circuit court held a bench trial on WREC's claim in January 2022, at which Huelsbeck and Wessel were the only witnesses.

_____

[3] At trial, there was conflicting testimony regarding the timing of Huelsbeck's rejection of Maltbey's initial offer to purchase. Ultimately, however, the precise timing of Huelsbeck's rejection is not material to our resolution of this appeal.

[4] There was conflicting evidence at trial regarding the reason for Huelsbeck's decision not to proceed with the sale. Again, this factual dispute is not material to our resolution of this appeal.

4

Huelsbeck's position at trial was that WREC had not earned a commission because Huelsbeck never consented to the use of electronic signatures, and, accordingly, Maltbey's electronic signature accepting Huelsbeck's counteroffer did not create an enforceable contract for the sale of the Property.

¶9    The circuit court disagreed, reasoning that the "electronic signature issue" did not "matter" because the only party who used an electronic signature was Maltbey, and Maltbey "clearly consented to the electronic signature." The court explained that Huelsbeck "didn't sign anything electronically. He signed the listing agreement personally. He signed or initialed each counter offer personally." The court also noted that Maltbey's use of an electronic signature did not raise "any sort of consumer protection issue" because Huelsbeck "saw every document. It was handed to him. It was presented to him by his realtor." Under these circumstances, the court stated that the electronic signature issue was a "red herring" and was not "a valid defense at all."

¶10    The circuit court therefore determined that, under the terms of the listing contract, WREC was entitled to recover a commission of $6,825—that is, seven percent of the agreed-upon sale price of $97,500—plus fees and costs. The court subsequently entered a money judgment in favor of WREC in the amount of $7,221.50. Huelsbeck now appeals.

**DISCUSSION**

¶11    Following a bench trial, a circuit court's findings of fact will not be set aside unless they are clearly erroneous. WIS. STAT. § 805.17(2). However, the interpretation of contracts and statutes—and their application to a given set of facts—are questions of law that we review independently. *See Gustafson v. Physicians Ins. Co. of Wis.*, 223 Wis. 2d 164, 172-73, 588 N.W.2d 363

(Ct. App. 1998) (contracts); *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999) (statutes).

## I. Enforceable contract

¶12 As discussed above, the circuit court concluded that WREC was entitled to recover a commission under the provision of the parties' listing contract stating that a commission is earned if the seller "sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property." Huelsbeck argues that the court erred because Maltbey's acceptance of Huelsbeck's counteroffer did not create an "enforceable contract" for the sale of the Property. More specifically, Huelsbeck contends that Maltbey's acceptance of the counteroffer did not comply with the statute of frauds, WIS. STAT. § 706.02, because Maltbey used an electronic signature to accept the counteroffer, and Huelsbeck never consented to the use of electronic signatures.

¶13 Under the statute of frauds, a contract to convey an interest in land "shall not be valid unless evidenced by a conveyance that … [i]s signed by or on behalf of all parties." WIS. STAT. § 706.02(1)(e). In this case, it is undisputed that Huelsbeck hand-signed his counteroffer, and Maltbey affixed an electronic signature to the counteroffer. Subject to certain exceptions that are not applicable here, WIS. STAT. ch. 137 "applies to electronic records and electronic signatures relating to a transaction." WIS. STAT. § 137.12(1). More specifically, ch. 137 "applies only to transactions between parties each of which has agreed to conduct transactions by electronic means." WIS. STAT. § 137.13(2).

¶14 Huelsbeck interprets this language in WIS. STAT. § 137.13(2) to mean that "both parties [must] agree to the use of electronic signatures before they are legally valid." WREC does not dispute that § 137.13(2) requires all parties to

a transaction to consent to the use of electronic signatures. In fact, WREC completely fails to address—or even cite—§ 137.13(2) in its appellate brief. We therefore deem WREC to have conceded Huelsbeck's argument that § 137.13(2) requires all parties to a transaction to consent to the use of electronic signatures. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.**,* 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶15    The circuit court did not find that Huelsbeck had consented to the use of electronic signatures for the purposes of his transaction with Maltbey. To the contrary, Huelsbeck testified at trial that Wessel never explained the concept of electronic signatures to him, that he never agreed to the use of electronic signatures, and that he did not "even know they existed."

¶16    In contrast, Wessel testified that Huelsbeck had consented to the use of electronic signatures because the offer to purchase that Maltbey signed on May 15, 2020, states:

> **DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Offer, delivery of documents and written notices to a Party shall be effective only when accomplished by one of the methods specified at lines 38-56.
>
>  ….
>
> (5) E-Mail: electronically transmitting the document or written notice to the Party's e-mail address, if given below at line 55 or 56. *If this is a consumer transaction where the property being purchased or the sale proceeds are used primarily for personal, family or household purposes,*[5]

---

[5] Wessel testified at trial that Huelsbeck stated he was going to use some of the proceeds from the sale of the Property to go moose hunting in Alaska. Wessel conceded that this use of the proceeds was for a "personal" purpose. On appeal, WREC does not dispute that the transaction qualified as a "consumer transaction," as that term is used in the offer to purchase.

> *each consumer providing an e-mail address below has first consented electronically to the use of electronic documents, e-mail delivery and electronic signatures in the transaction, as required by federal law.*

(Emphasis added.)  Wessel testified that this language means that "[i]f there is an e-mail address in [lines] 55 or 56 [of the offer to purchase], and [a party] sign[s] the offer to purchase, they have consented to [the] electronic use of documents."

¶17   The problem with Wessel's rationale is that Huelsbeck did not provide an e-mail address on the offer to purchase.  Instead, Wessel—who prepared the offer to purchase on behalf of Maltbey—inserted his own e-mail address on line 55 of the offer to purchase as the e-mail address of the "Seller." Under these circumstances, the inclusion of an e-mail address in line 55 does not show that Huelsbeck "first consented electronically to the use of … electronic signatures in the transaction, as required by federal law."[6]

¶18   Notably, WREC does not argue on appeal that Huelsbeck consented to the use of electronic signatures.  Instead, WREC cites WIS. STAT. § 137.13(5), which states, "Whether an electronic record or electronic signature has legal consequences is determined by this chapter *and other applicable law*." (Emphasis added.)  WREC then cites ***Kocinski v. Home Insurance Co.***, 147 Wis. 2d 728, 735, 433 N.W.2d 654 (Ct. App. 1988) (citation omitted), *aff'd as modified and remanded*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990), in which this court cited a secondary source for the proposition that a signature need not be handwritten in ink but may instead consist of "initials, thumbprint or an arbitrary code sign" and

---

[6] The circuit court did not address the e-mail address on line 55 of the offer to purchase or make any factual findings regarding it.

"may be written in pencil, typed, printed, made with a rubber stamp, or impressed into the paper."

¶19    Although the precise contours of WREC's argument are not entirely clear, it appears WREC believes that *Kocinski* constitutes "other applicable law" showing that Maltbey's electronic signature in this case was valid for purposes of the statute of frauds. *See* WIS. STAT. § 137.13(5). This argument is unpersuasive for two reasons. First, the issue in *Kocinski* was the meaning of the term "subscribed" in WIS. STAT. § 807.05, a term that is not at issue in the instant case. *See Kocinski*, 147 Wis. 2d at 734. Second, *Kocinski* did not address the validity of an *electronic* signature. Instead, all of the examples of alternative signature types listed in *Kocinski* involved physical marks made on paper. In particular, *Kocinski* did not address whether an electronic signature is valid when one of the parties to the transaction did not consent to the use of electronic signatures.

¶20    WREC also argues that there is "no material difference between a party typing or printing a signature on a document and a party affixing an electronic signature to a document." In addition, WREC asserts that "every piece of evidence before the circuit court showed that Maltbey—the only party who used an electronic signature—intended to be bound by his signature and would have proceeded to closing absent Huelsbeck's decision to back out of the sale." Again, though, WREC does not dispute Huelsbeck's argument that WIS. STAT. § 137.13(2) requires all parties to a transaction to consent to the use of electronic

signatures, nor does WREC argue that Huelsbeck actually consented to the use of electronic signatures.[7]

¶21    Under these circumstances, we agree with Huelsbeck that Maltbey's electronic signature on Huelsbeck's counteroffer did not comply with the statute of frauds, and, accordingly, no "enforceable contract" for the sale of the Property was formed.  The circuit court therefore erred by determining that WREC was entitled to collect a commission under the provision of the listing contract stating that a commission is earned if the seller "accepts an offer which creates an enforceable contract for the sale of all or any part of the Property."

## II.  Ready, willing and able buyer

¶22    In the alternative, WREC argues that it was entitled to collect a commission under the terms of the listing contract because it produced a ready, willing and able buyer.[8]  This argument fails because it ignores the listing contract's plain language.

---

[7] We acknowledge that WIS. STAT. § 137.13(2) states that "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct."  However, WREC does not develop any argument on appeal that the parties' conduct in this case provides evidence of Huelsbeck's consent under § 137.13(2).  We will not abandon our neutrality to develop such an argument on WREC's behalf.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.  We also note that the circuit court did not make any factual findings regarding Huelsbeck's conduct as related to the issue of consent.

[8] Huelsbeck argues that WREC forfeited this argument by failing to raise it in the circuit court.  In response, WREC notes that a respondent may generally raise any argument on appeal that would allow us to affirm the circuit court's decision, even if the argument was not raised below.  *See Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶42, 274 Wis. 2d 719, 685 N.W.2d 154.  We assume, without deciding, that WREC did not forfeit its argument regarding the listing contract's "ready, willing and able buyer" provision.  We note, however, that by failing to raise that argument below, WREC deprived the circuit court of the opportunity to make any factual findings regarding whether Maltbey was a ready, willing and able buyer.

¶23   As noted above, the listing contract states that a commission is earned if

> [a] ready, willing and able buyer submits a bona fide written offer to Seller or [WREC] for the Property *at, or above, the list price* and on substantially the same terms set forth in this Listing and the current WB-13 Vacant Land Offer to Purchase, even if Seller does not accept the buyer's offer.

(Emphasis added.)  Maltbey submitted an initial offer to purchase the Property and a subsequent counteroffer, both of which were below the list price of $100,000. Maltbey ultimately accepted Huelsbeck's counteroffer to purchase the property for $97,500, but that amount was also below the list price.  Thus, Maltbey never submitted an offer to purchase the Property "at, or above, the list price," as required to trigger WREC's entitlement to a commission under the listing contract's "ready, willing and able buyer" provision.

¶24   In addition, the listing contract states that "[a] buyer is ready, willing and able when the buyer submitting the written offer has the ability to complete the buyer's obligations under the written offer."  Maltbey's offer to purchase contained a financing contingency.  No evidence was introduced at trial to show that the financing contingency had been satisfied.  Consequently, WREC failed to show that Maltbey had the ability to complete his obligations under the offer to purchase, and it therefore failed to show that Maltbey was a ready, willing and

11

able buyer.[9]  As such, WREC was not entitled to a commission under the listing contract's "ready, willing and able buyer" provision.

> *By the Court.*—Judgment reversed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[9] WREC asserts that the circuit court "made a factual finding that the reason the transaction did not close was that Huelsbeck, the seller, got 'cold feet.'"  WREC therefore contends that Maltbey must have been a ready, willing and able buyer because "the evidence showed that Maltbey could and would have proceeded to closing, but was prevented from doing [so] by Huelsbeck for reasons unrelated to any contingency."

What the circuit court actually found, however, was that Huelsbeck *backed out of the transaction* because he "had cold feet."  The court did not find that the transaction *would have closed* but for Huelsbeck's cold feet.  Stated differently, the court did not find that Maltbey had the ability to complete his obligations under the offer to purchase and that, as a result, the transaction necessarily would have closed absent Huelsbeck's actions.  In any event, even if Maltbey had the ability to complete his obligations under the offer to purchase, WREC was not entitled to a commission under the listing contract's "ready, willing and able buyer" provision because Maltbey did not submit an offer at, or above, the Property's list price.