**LEONARD DUCKWORTH, INC., and Kofender, Snoddy & Associates, Plaintiffs-Appellees,**

v.

**MICHAEL L. FIELD AND COMPANY, and Michael L. Field, Individually, Defendants-Appellants.**

No. 74–3108.

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1975.

Rehearing Denied Sept. 24, 1975.

---

Michael L. Field, pro se, William M. Ravkind, Dallas, Tex., for defendants-appellants.

John H. McElhaney, Dallas, Tex., for plaintiffs-appellees.

Before GODBOLD, Circuit Judge, SKELTON, Associate Judge,* and GEE, Circuit Judge.

SKELTON, Judge:

This case deals with the question of whether the defendants-appellants tortiously interfered with plaintiffs'-appellees' reasonable expectancy of a real estate commission resulting from the sale of certain real property. In May 1972, Leonard Duckworth, Inc., a Texas corporation specializing in real estate sales, and Jack Kofender and Raymond Snoddy, both licensed real estate agents working at the time for the Duckworth Company (hereinafter plaintiffs), contacted the Chase Manhattan Bank in New York City (hereinafter Chase) to inquire as to Chase's willingness to sell certain property called the Lands End Apartment Project (Lands End) in Dallas, Texas. After receiving operating information from the Chase, plaintiffs first submitted to the bank an offer for the purchase of the property from a David Kitzinger. After this was refused, plaintiffs initiated negotiations with Chase for the sale of Lands End to defendant company, Michael L. Field & Co. (Field Co.). These negotiations consisted of two written drafts of a sale contract submitted to Chase by plaintiffs and substantial oral communications by plaintiffs to the bank. In each of the draft contracts, to be signed by all three parties, the seller was required to pay a brokerage commission to the plaintiffs. Throughout the negotiations for the prospective purchase of the property, plaintiffs' contact with the defendant was predominately through co-defendant Mi-

---

* Of the U. S. Court of Claims, sitting by designation.

chael L. Field (Field), at all times material here, president of Field Co.

In September 1972, the plaintiffs and defendants were notified by William Schwartz, the bank's real estate officer responsible for this property, that the defendants' second offer was rejected but that Chase might accept it if it were resubmitted at the first of the year after a certain change in Chase's personnel occurred. Plaintiffs did in fact contact Chase on January 2, 1973, with respect to the sale of Lands End, and in addition attempted to help secure financing for the project.

Sometime in February 1973, Field initiated direct negotiations with Schwartz of the Chase without going through the plaintiff-broker, as had been done with his first two offers. These private negotiations ultimately led to an offer of $3,425,000 for the property, which was subsequently accepted by the Chase. Prior to execution of this last offer, plaintiff Kofender asserted to the Chase and defendants that plaintiffs would be due a commission on the completion of the sale inasmuch as they brought the parties together and the final contract was merely the culmination of negotiations initiated by plaintiffs. Field, however, denied that plaintiffs represented him as a broker during these final negotiations, and, at Chase's urging, inserted an indemnity clause into the finally executed contract in which Field and Field Co. agreed to indemnify Chase for any brokerage commissions that might be asserted against it. The sales contract was signed by Chase on June 1, 1973, although for reasons not clearly stated, the sale was never consummated.

Plaintiffs brought suit against Field Co. and Michael Field individually in federal district court for damages for the tortious interference with their reasonable expectation of a brokerage commission on the sale of Lands End. A jury, in response to special interrogatories found: (1) that Field and Field Co. induced Chase not to enter into an agreement with plaintiffs for the sale of Lands End to Field Co. in order to avoid payment of a brokerage fee; (2) that this was done by defendants with malice; (3) that, but for the interference there was a reasonable probability that Chase and plaintiffs would have entered into the contract; and (4) that $113,250 was a reasonable brokerage fee under the circumstances. The trial judge entered judgment against both defendants jointly and severally for $113,250 and defendants timely appealed to this court.

■ As a general proposition, wrongful or malicious interference with the performance or the formation of a contract or the right to pursue a lawful business calling, trade, or occupation constitutes a tort for which damages may be recovered. See 86 C.J.S. *Torts* § 43 (1954); Restatement of Torts § 766 (1939). In addition, the common law has long held that the reasonable expectancy of a prospective contract is a property right to be protected from wrongful interference in the same sense as an existing contract is protected. *Keeble* v. *Hickeningill*, 103 Eng.Rep. 1127 (Q.B. 1706); *Brennan* v. *United Hatters of North America*, 73 N.J.L. 729, 65 A. 165 (1906); *Jersey City Printing Co.* v. *Cassidy*, 63 N.J.Eq. 759, 53 A. 230 (1902). In the Restatement of Torts, recognition is given of the existence of liability for interference with prospective contracts or other business relationships as follows:

Except as stated in Section 698, one who without a privilege to do so, induces or otherwise purposely causes a third person not to * * * b) enter into or continue a business relation with another is liable to the other for the harm caused thereby. [Restatement of Torts, § 766 (1939).]

Moreover, where negotiations are under way and appear likely to succeed, interference with them has been considered to be a tort.

* * * Any intentional interference with negotiations reasonably certain to result in an advantageous contract on the part of the plaintiff is, unless privileged, an actionable wrong. [1 Harper & James, Torts § 6.12 (1956).]

**956**

■ Texas law, which must be followed in this diversity action, similarly permits a cause of action for interference with reasonably probable future contractual relations. This law was expressed as follows:

Texas courts recognize a cause of action for improper interference with contractual relationships, and the unenforceability of the contract is usually no defense to an action for tortious interference with its performance. Clements v. Withers, 437 S.W.2d 818, (Tex.), where recovery was allowed for tortious inducement of breach of an existing contract; Raymond v. Yarrington, [96 Tex. 443], 73 S.W. 800 (Tex.Sup.). Our courts have also recognized a cause of action for tortious and wrongful interference with advantageous business relationships. Cooper v. Steen, 318 S.W.2d 750, 757, (Tex.Civ. App.), no writ. hist., and cases there cited. And see Pope v. Garrett, 147 Tex. 18, 211 S.W.2d 559. It need not be absolutely certain that the prospective contract would have been made were it not for such interference. A reasonable assurance thereof in view of all the circumstances, is generally sufficient. 86 C.J.S. Torts § 43, p. 959. But where there is no contract, as here, a party does not have a right to be free from competition, but instead merely has *the right to be free from malicious interference with the right to conduct negotiations that have a reasonable probability of resulting in a contract.* [Emphasis supplied.] [*Martin* v. *Phillips Petroleum Co.*, 455 S.W.2d 429, 435 (Tex.Civ.App.1970) reh. denied.]

Recovery for malicious or tortious interference with contractual relations has been permitted specifically in real estate situations such as the instant case. *See Myers* v. *Arcadia*, 73 N.J.Super. 493, 180 A.2d 329 (1962). In *Myers*, a real estate broker brought suit against a buyer of property for the loss of his commission after the buyer secretly negotiated with the property owner for the sale of certain real estate. When the buyer and seller subsequently entered into a contract of sale, the broker claimed that he brought the parties together and was therefore entitled to his commission. The court in agreeing with the plaintiff's position stated:

We hold that the rule to be applied in a case such as the one at bar is that the broker may recover when the jury is satisfied that but for the wrongful acts of the defendant it is *reasonably probable* that the plaintiff would have effected the sale of the property and received a commission. * * * [Emphasis supplied.] [180 A.2d at 331.]

■ In the case of *Glenn* v. *Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971) the elements of the tort of wrongful interference with a prospective contract right are clearly enumerated. For a plaintiff, such as in the instant case, to prevail, he must show that (1) there was a "reasonable probability" that he would have entered into a contractual relationship; (2) defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming plaintiff; (3) the defendant was not privileged or justified, and (4) actual harm or damage occurred as a result. *Cf. Light* v. *Transport Insurance Co.*, 469 S.W.2d 433 (Tex.Civ.App.1971) reh. den.

■ We believe that given the particular circumstances of this case there was sufficient evidence for the jury to have found that defendants committed the alleged tort, and, therefore, the judgment should be affirmed. It is apparent that at the time the alleged interference occurred there was a reasonable certainty that Chase would have entered into a three party contract with the plaintiffs and defendants for the sale of Lands End under which plaintiffs would have been due a broker's commission. It is undisputed that the parties to the final sales contract were brought together as a result of the efforts of the plaintiffs. During the first few months, all negotiations were handled through the plaintiffs' offices and at all times plaintiffs were recognized as the brokers to whom a commission would be due should the parties enter into a contract. When

the negotiations ended in the fall of 1972 without a contract but with the suggestion by Chase that they be reinitiated at the beginning of the new year, there was no indication that plaintiff was ceasing its efforts to get a contract of sale executed. By contacting Chase in January 1973, plaintiffs further evidenced its intention to continue its part in the postponed negotiations. Since under Texas law, negotiations are considered continuing even though suspended for several months, 9 Tex.Jur.2d *Brokers* § 40 (1974); *see also Bowman* v. *Southwest Land Co.*, 107 S.W. 585 (Tex.Civ.App. 1908), plaintiffs' conduct in January 1973 must be considered part of a continuing effort to consummate the sale. In deciding whether there was a "reasonable certainty" of entering into a contract at the time the interference took place, it is significant to note that the final sales contract between Chase and defendants that was arrived at through the direct dealings of defendants, was, with the exception of one minor price adjustment and the indemnity clause, identical with the second offer submitted by the plaintiffs in September 1972. These circumstances seem to inexorably point to the conclusion that, at least when direct negotiations began between Chase and defendants, there was a reasonable chance for a three party contract to have been entered into with the plaintiffs as the broker. Moreover, it is clear that the defendants were the motivating force behind Chase's failure to enter into a contract with the plaintiffs when they initiated the direct negotiations, and, in other ways, induced Chase to sign a contract of sale which did not include a commission to plaintiffs.

The requirement of malice in the context of the tort of malicious interference means an unlawful act done intentionally and without just cause or excuse. *Light* v. *Transport Ins. Co., supra*; 86 C.J.S. *Torts* § 43. Such malice is described by *Glenn* v. *Point Park College, supra*, as including the interference with the formation of a contractual relationship with the intent of harming plaintiff. Under the evidence presented in the instant case, legal malice on the part of the defendants Field and Field Co. appears to be present. Notwithstanding knowledge of the extent of plaintiffs involvement in the continuing negotiations and the reasonable expectation of a real estate commission upon the execution of a purchase contract, defendants initiated surreptitious direct dealings with Chase. There is testimony in the record by Robert Hill, a corporate officer of defendant, which seems to indicate that defendants' conduct was for the explicit purpose of depriving plaintiffs of their commission. Besides the intentional secret dealings, the record shows that in earlier drafts of the final contract between defendants and Chase, Field Co. and Field agreed to indemnify Chase from any claims which might be raised specifically by the plaintiffs. Thus, in one early draft defendants included the following language:

> Purchaser represents that (i) it has not at any time dealt with any broker in connection with the premises other then Leonard Duckworth, Inc. And (ii) the said broker is not entitled to any brokerage commission with this sale. Purchaser agrees to indemnify and hold harmless Seller from and against any and all claims or demands *by said broker* or any other broker * * *. [Emphasis supplied.]

Legal malice is therefore present here, since, in the face of plaintiff-brokers' reasonably certain expectation of a commission-bearing sales contract, defendants intentionally attempted to induce the seller not to deal with the broker with the explicitly stated purpose of depriving the broker of his commission.

Defendants' malicious interference in plaintiffs' reasonable expectancy could be excused if it were privileged or resulting from legitimate business considerations. *Cf. Glenn* v. *Point Park College, supra*. The most frequently articulated privilege that is asserted to defend against the tort of wrongful interference is that of reasonable compe-

tition in the solicitation of contracts. This privilege however is limited to what is considered within the realm of "fair play." In *Light* v. *Transport Ins. Co., supra,* a case dealing with interference by a competitor with the renewal of an insurance policy issued by the plaintiff, the Texas court cited approvingly the following language:

> * * * The courts take the position that if means of competition are fair, advantage should remain where success has put it, but if acts complained of do not rest on some legitimate interest or *if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed.* [Emphasis supplied.] [45 Am.Jur.2d *Interference* § 1 (1969).]

In view of the surreptitious negotiations, the proposed indemnity clause protecting the seller explicitly from plaintiffs' claim for commission and the defendants' apparent motive to prevent plaintiffs from receiving their reasonably expected commissions, defendants' acts cannot be considered as protected by the same privilege afforded competitors who are fairly and honestly vying for competitive advantage. These acts can only be termed sharp, overreaching, and beyond the pale of "fair play" and should not be privileged.

We also hold that the fourth requirement, damages, is present in this case. That plaintiffs have been damaged is most clearly apparent from the fact that they would have received a commission of $113,250 had they been allowed to sign the contract that was eventually executed between the buyer and seller. As the jury found and as the evidence shows, but for the wrongful inducements of defendants, plaintiffs would have been part of this sales contract and would have received a commission.

We therefore believe that, taking the evidence in a light most favorable to appellee, as we must in view of the jury verdict, plaintiffs' reasonable expectation of a contract was maliciously interfered with by defendants' actions and plaintiffs are entitled to judgment.

Defendants point to the fact that although the contract of sale was signed by both Field Co. and Chase in June 1973, for reasons not clearly indicated, the agreement was never consummated and therefore the defendants allege that the plaintiffs are due only nominal damages if any. This conclusion results from an incorrect reading of Texas law. According to Texas precedent, a broker may earn his commission by procuring from the purchaser a valid, enforceable contract of sale and the right to recovery is not affected by the subsequent refusal or inability of the parties to complete the transaction. Consummation, as far as the brokers fee is concerned, is deemed to have been effected when the contract is entered into and not when the deal is closed. 9 Tex. Jur.2d *Brokers* § 51 (1974). Thus, absent specific contractual language making the broker's commission contingent upon actual closing, the broker is due his commission upon the signing of the sales agreement and not upon the actual conveyance. *See Richmond-Carcia Oil Co.* v. *Coates,* 17 F.2d 262 (5th Cir. 1927); *Miller* v. *Carlson,* 390 S.W.2d 64 (Tex.Civ. App.1965); *Stevens* v. *Karr,* 119 Tex. 479, 33 S.W.2d 725 (1930); *Garner* v. *Davis,* 225 S.W. 567 (Tex.Civ.App.1920). The plaintiffs' cause of action to recover damages from the defendants accrued at the time of the wrongful interference with their prospective commission which, at the latest, was at the time of the signing of the final contract. Thus, the later failure to convey the property does not prevent plaintiffs' recovery.

Lastly, defendant Field alleges that he should not be jointly and severably liable for the damages resulting from this interference since he acted merely as Field Co's agent and not in his own capacity. We do not believe this argument is entitled to much weight. Under general tort and agency law, where an agent commits a tort while acting within the scope of his employment as the agent of another, he will be personally liable in damages, even though his principal is also liable under the doctrine of *respondeat superior.*

*Whitson* v. *Bluff Creek Oil Co,* 278 S.W.2d 339 (Tex.Civ.App.1955). In addition, the particular facts in this case indicate that Field acted in an individual capacity in addition to acting as president of Field Co., and therefore has incurred liability beyond that of a mere agent. For example, in seeking to induce Chase to enter into the final contract, Field permitted the following indemnity clause to be included:

> In order to induce Seller to enter into this Agreement, Purchaser [Field Co.] and Michael L. Field hereby *jointly and severally* agree to indemnify and hold harmless Seller * * * from and against any and all claims or demands which may at any time be asserted against them * * * by any broker * * * for brokerage commissions * * *. [Emphasis supplied.]

Moreover, in a moment of candor which was for him unfortunately recorded for posterity by the plaintiff Kofender, to whom he was speaking the following admission was made:

Michael Field: "The Chase Manhattan Bank doesn't care. Do you know why?"

Raymond Snoddy: "Yea?"

Michael Field: "Cause they don't have any exposure. They are no dummies. That was covered, sweetheart, three weeks ago when Kofender first opened his mouth. What he should have done is let the contract go through and then he could have gone to the Chase, but the Chase is clear, sweetie. The Chase has their attorneys. There was no contract entered into by the Chase and me without three different attorneys on each side checking everything through thoroughly. Once Kofender blanked, and it is all over with, sweetie. The Chase is free and clear. You can sue them to Tucumcari. I got to tip you off, honey, there is only one person you are going to deal with—it is me. Because they are 100% indemnified, by both Michael L. Field & Co. and Michael L. Field. So you know who you are going after. Sue the Chase, but you know who you will be up in Court with. You are talking to him."

Taken together, the evidence clearly shows that in addition to any tort liability he may have imposed on Field Co. as its agent, as well as his own liability as such agent, Michael Field also incurred personal liability by acting in his individual capacity during the period in which this tort was occurring. Therefore, there was no error in holding him jointly and severably liable to plaintiffs.

For all of the reasons given above, we find that there was sufficient evidence to show that the defendants were liable to plaintiffs for the wrongful interference with their reasonable expectation of a profit, and, therefore, the District Court's judgment should be, and it is hereby

Affirmed.