DUGAN, J.
¶ 1 IFS Filing Systems LLC appeals from the trial court's order, following a trial to the court.
¶ 2 This case involves a landlord/tenant dispute that resulted in a judgment of eviction and an award of damages. 11225 Heather LLC is the owner of a commercial building located in Milwaukee, Wisconsin. When Heather purchased the property, the tenant in the building was Integrated Filing Solutions LLC. Integrated subsequently assigned the lease to IFS.
¶ 3 Heather filed a small claims eviction action alleging that IFS breached the lease by failing to pay the management fee portion of the rent and by failing to provide financial statements. IFS then filed a large claims action seeking damages and declaratory judgment. IFS alleged that Heather had breached the lease by charging common area maintenance (CAM) fees and sought declaratory judgment that it had a right to purchase the property. The trial court consolidated the two actions for trial. IFS subsequently filed an amended complaint to include claims against Brennan Investment Group LLC and added new claims against Heather.
¶ 4 Following a trial to the court, the trial court (1) granted a writ of eviction and awarded damages of $83,586.07 to Heather, (2) held that Heather proved its breach of contract and tortious interference with contract claims against IFS and awarded damages of $1.25 million, (3) awarded attorney fees of $184,262.58 to Heather pursuant to the lease terms, (4) denied IFS's claims against Brennan Investment for strict responsibility and negligent misrepresentation, and (5) denied IFS's claims against Heather for breach of contract and contract reformation.
¶ 5 On appeal, IFS argues that the trial court erred regarding each of its holdings. IFS states that while this case involves various claims, it revolves around four main issues: (1) a dispute over CAM charges; (2) Heather's claims that IFS did not provide financial statements; (3) Heather's misrepresentations by omissions at the time of the assignment of the lease; and (4) IFS's right to purchase the premises for $4.15 million.[1] For the reasons stated below, we affirm.
¶ 6 The following background, which relies primarily on the trial court's findings of fact, provides helpful context for the issues in this case. Additional facts are included in our analysis as needed.
BACKGROUND
¶ 7 This litigation involves a large commercial building located at 11225 Heather Avenue (the "property") in Milwaukee. Brennan Investment initially signed the purchase and sale agreement for the property and negotiated the lease with the tenant, Integrated. The lease was signed by Brennan Investment and Integrated. Prior to the closing on the property, Brennan Investment assigned the purchase and sale agreement and the lease to Heather, and Heather closed on the property on July 19, 2011.
¶ 8 Relevant terms of the lease include: (1) Section 5.2(A)(2) of the lease states that the lease management fee is considered part of the rent; (2) Section 15.1 states that the tenant must provide financial statements quarterly and annually, and upon request, and sets forth requirements for the financial statements, chief among them, that the financial statements be certified; and (3) Section 29.3 gives IFS a right of first refusal to buy the property-not an independent right to purchase.[2]
¶ 9 On January 15, 2013, IFS accepted a complete assignment of the lease from Integrated and it became responsible for all obligations under the lease. Subsequently, IFS refused to pay the portion of the rent charged as management fees and failed to produce its financial statements.
¶ 10 On March 3, 2014, Heather issued a notice of default under the lease, identifying two breaches by IFS: (1) failure to pay management fees-the notice gave IFS seven days to cure that breach; and (2) failure to provide financial statements-the notice gave IFS thirty days to cure that breach.
¶ 11 On April 29, 2014, Heather filed a small claims eviction action against IFS. Heather sought immediate possession of the property and money damages. On May 13, 2014, IFS filed a large claims action against Heather for breach of contract, declaratory judgment, and damages. Heather filed an answer and counterclaims. Heather sought rescission and counterclaimed for: (1) declaratory judgment that IFS did not have a right to purchase, and that IFS was obligated to pay the management fee and to provide financial documents upon request by Heather; (2) breach of contract; and (3) tortious interference with contract. In July 2014, Heather's small claim eviction case was consolidated with IFS's large claims action.
¶ 12 Heather filed a motion for summary judgment regarding IFS's claims and the trial court issued several decisions regarding the motion. Ultimately, the trial court granted summary judgment dismissing IFS's claim for declaratory judgment that under the lease it had a right to purchase the property. The trial court held that IFS had only a right of first refusal, not a right to purchase.
¶ 13 IFS filed an amended complaint joining Brennan Investment, alleging claims for both strict responsibility misrepresentation and negligent misrepresentation against Heather and Brennan Investment, and claims for both breach of contract and equitable contract reformation against Heather. Heather and Brennan Investment brought a motion to dismiss IFS's claims in the amended complaint. On October 28, 2015, the trial court granted the motion as to IFS's claims against Heather for strict responsibility misrepresentation, negligent misrepresentation, and breach of contract regarding IFS's claim that it had a right to purchase. It denied the motion to dismiss regarding the remaining claims.
¶ 14 The matter then proceeded to a three-day court trial commencing on January 9, 2017. The trial court found that IFS breached the lease and awarded Heather $83,586.07 for unpaid rent, $184,262.58 for attorney fees pursuant to the lease, and granted a judgment of eviction. The trial court also found that IFS breached the contract by failing to provide financial statements, and had tortiously interfered with Heather's ability to sell the property, and awarded Heather $1.25 million in damages-it found that the damages were the same under either claim. It also denied all of IFS's claims against Heather and Brennan Investment.
¶ 15 On June 16, 2017, the trial court issued a final order and on August 2, 2017, it issued an order staying enforcement of the final order pending appeal. This appeal followed.
DISCUSSION
¶ 16 IFS contends that there is no basis for the trial court's determinations that Heather is entitled to a writ of eviction, that Heather proved its breach of contract claim, or that that Heather proved its tortious interference claim. IFS also contends that Heather breached the contract and misrepresented material facts. IFS also contends that the trial court erred in granting summary judgment to Heather regarding IFS's declaratory judgment claim that it has a right to purchase the property. We address these arguments in sequence.
I. Standards of Review
¶ 17 Basically, IFS challenges the sufficiency of the evidence to support the trial court's extensive findings. On appeal, we will not reverse the trial court's fact findings unless they are clearly erroneous. See WIS. STAT. § 805.17(2) (2015-16).[3] A finding is clearly erroneous if it is not supported by the record. Royster-Clark, Inc. v. Olsen's Mill, Inc. , 2006 WI 46, ¶ 11, 290 Wis. 2d 264, 714 N.W.2d 530. Under the clearly erroneous standard, "even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." Reusch v. Roob , 2000 WI App 76, ¶ 8, 234 Wis. 2d 270, 610 N.W.2d 168. Additionally, we search the record for evidence supporting the trial court's finding, not for evidence opposing it. See Mentzel v. City of Oshkosh , 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988).
¶ 18 We defer to the trial court's findings of fact. See Adams Outdoor Advert., Ltd. v. City of Madison , 2006 WI 104, ¶ 27, 294 Wis. 2d 441, 717 N.W.2d 803 ("Where there is conflicting testimony the fact finder is the ultimate arbiter of credibility."). A finding of fact will not be set aside merely because some evidence supports a contrary finding. See Cogswell v. Robertshaw Controls Co. , 87 Wis. 2d 243, 249, 274 N.W.2d 647 (1979).
¶ 19 Furthermore, "[i]t is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.' " See Gaethke v. Pozder , 2017 WI App 38, ¶ 36, 376 Wis. 2d 448, 899 N.W.2d 381 (citations and one set of quotation marks omitted).[4]
¶ 20 Application of the law to the facts presents a question of law that we review de novo . See Adams Outdoor , 294 Wis. 2d 441, ¶ 27. The "interpretation of an unambiguous contract presents a question of law for this court's independent review." See Betz v. Diamond Jim's Auto Sales , 2014 WI 66, ¶ 24, 355 Wis. 2d 301, 849 N.W.2d 292. However, whether a party's breach is material is a question of fact. See Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co. , 206 Wis. 2d 158, 184, 557 N.W.2d 67 (1996) ; see also Wm. G. Tannhaeuser Co. v. Holiday House, Inc. , 1 Wis. 2d 370, 374, 83 N.W.2d 880 (1957).
II. The Record and the Applicable Law Support the Trial Court's Issuance of the Writ of Eviction and the Related Damage Award
¶ 21 IFS contends that it was not required to pay the management fees under the terms of the lease and that it complied with the lease requirement that it provide financial information. IFS also contends that the trial court erred in issuing the writ of eviction because under Wisconsin law, only material breaches of a lease constitute a basis for its termination[5] and neither the nonpayment of management fees nor the failure to produce financial information constituted material breaches of the lease. It further contends that Heather's eviction claim was not preserved when Heather filed an answer and counterclaims to IFS's amended complaint in the large claims action and that Heather failed to provide the necessary notice to IFS to permit eviction.
A. IFS Was Required to Pay Management Fees and that Failure Constituted a Material Breach of the Lease
¶ 22 IFS argues that the trial court erred in finding that the 3.5% management fee was additional rent under the lease and that IFS's failure to pay that amount was a material breach. We disagree.
Breach of the Obligation to Pay Management Fees
¶ 23 As noted, section 5.1. of the lease provides that the tenant is required to pay base rent and additional rent. Section 5.2.(A)(2) and (3) provide that the tenant shall pay as additional rent, "Rent Adjustments" which include "all amounts owed by Tenant as Additional Rent on account of Expenses[.]" Section 5.2.(2) defines "Expenses" as including "all expenses paid or incurred by Landlord for managing" the property. (Emphasis added.)
¶ 24 The trial court found that the 3.5% charges were management fees, although they were coded as CAM fees in monthly rent invoices, that IFS was obligated to pay them, and that IFS failed to pay them.[6] Based on that finding, it determined that as a matter of law, IFS had breached the lease.
¶ 25 Having considered the plain and ordinary words of the relevant lease terms de novo , see Betz , 355 Wis. 2d 301, ¶ 39, we conclude that management fees are included in "all expenses paid or incurred by Landlord for managing ," and that additional rent includes expenses as defined in the lease. (Emphasis added.)
¶ 26 We also conclude that the trial court's findings of fact with respect to the management fee are supported by the record. Samuel Dickman, a real estate broker, was involved in negotiating the lease terms with Integrated and specifically recalled that during the negotiations Michael Gilbert, who owned Integrated, agreed that a 3.5% management fee would be assessed as part of the rent. Further, Gilbert testified that he knew about the management fee, felt it was reasonable, and paid it monthly. The record also establishes that Heather had a written management agreement with Brennan Management and that Heather reported the 3.5% management fees on its tax returns.[7]
¶ 27 The record also shows that no later than March 2013, IFS knew that the CAM code referred to management fees and that the fees were due under the lease. In January 2013, Sam Mandarino, counsel for Brennan Management, received a message from Diane Tiveron, IFS's counsel, stating that IFS was buying Integrated and wanted to discuss the transition. Mandarino recalled that there was confusion regarding the coding as "CAM," and that he told Tiveron that the only item Brennan Management (on behalf of Heather) would be passing through to IFS would be the management fee. Moreover, the trial court found that "[t]his was confirmed by Sam Mandarino in an email to Attorney Tiveron, the [a]ttorney for IFS. There was no reply email disputing this assertion."
¶ 28 We conclude that although IFS continues to assert that the lease does not provide for CAM charges or management fees or any other fees to be charged at a rate of 3.5%, the trial court's finding that the CAM code related to the management fees is not clearly erroneous. IFS was obligated to pay the management fee as part of the rent and failed to do so.
The Breach Was Material
¶ 29 IFS also argues that its nonpayment of the management fees was not a material breach. Whether a breach constitutes a material breach is an issue of fact. See Wm. G. Tannhaeuser Co. , 1 Wis. 2d at 374. We conclude that IFS has not established that the trial court's factual determination that the breach was material is clearly erroneous. It cites several cases with broad language concerning material breach of a contract. However, none of those cases involve a lease or nonpayment of rent. IFS does not cite any case that holds that nonpayment of rent is not material. In a lease, the landlord conveys a right of possession to the tenant in exchange for rent. Rent is the consideration for the lease and is an essential object of the lease. See M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc ., 195 Wis. 2d 485, 501, 536 N.W.2d 175 (Ct. App. 1995) (stating " '[r]ent' is defined as '[c]onsideration paid for use or occupation of property' ") (citation omitted).
¶ 30 In Decade 80-I, Ltd. ex rel. Keierleber v. PDQ Food Stores, Inc. of Madison , the issue before the court was "whether the tenant must prove considerable damages to the business in order to show that a breach of the lease was 'substantial' enough to allow rescission." See id. , 226 Wis. 2d 42, 43, 593 N.W.2d 94 (Ct. App. 1999). There, the lease included a provision that required the landlord to maintain the parking lot and the landlord failed to do so. Id. The court stated that "[b]ecause the parking area maintenance provision in the lease was part of the bargain between the parties, we hold that the landlord's failure to repair gives the tenant the right to get out of the lease without proving substantial damage to business interests." See id. at 43-44. The court went on to explain that:
The inclusion of the maintenance provision in the lease was part of the bargain struck between [the tenant] and [the landlord] just as much as the rent was . [The tenant] is entitled to the benefit of that bargain. Nothing in the covenant envisions that the tenant must prove the infliction of actual economic loss before invoking the remedies provided. Furthermore, to read in such a requirement would be an unfaithful interpretation of the lease.
See id. at 51 (emphasis added). Here, the management fee was part of the bargain struck between Heather and IFS, just as much as the parking lot maintenance was in Decade .
¶ 31 Further in Decade , this court held that "[i]f the owner of commercial property agrees to keep a parking lot maintained, and rent is paid partly in consideration for that promise, then a breach of that promise is grounds for terminating the lease, whether the breach causes lost profits or not." See id. at 52 (emphasis added). Here, IFS, as the tenant, agreed to pay rent which included the management fee in consideration for the use and occupation of the property and it breached its promise to pay the full amount of the rent. As in Decade , the breach of that promise is grounds for terminating the lease and evicting IFS from the property.
¶ 32 Additionally in Decade , this court noted that "this lease also dictated the available time for curing a default and the tenant's remedy when a default was not cured." See id . Here, the lease also dictated the available time for IFS to cure its default and Heather's eviction remedy when the default was not timely cured.
¶ 33 We conclude that the trial court properly found that IFS's failure to pay the management fee portion of the rent was a material breach. Moreover, based on this breach alone, we would uphold the trial court's issuance of the writ of eviction. However, we also address the issue of the financial statements.
B. IFS Failed to Provide Proper Financial Statements and that Failure Constituted a Material Breach of the Lease
¶ 34 Section 15.1. of the lease, in relevant part, provides:
Financial Statements . Tenant agrees to timely provide financial information as requested by Landlord, including, but not limited to , annual financial statements audited by independent certified public accountants (or if Tenant does not cause its financial statements to be audited in the normal course of business, then such financial statements shall be certified as true, correct and complete by the Tenant's customary accountant) within 90 days after the end of each fiscal year and quarterly financial statements within 60 days after the end of each fiscal quarter and any other financial information reasonably requested by Landlord[.]
(Emphasis added.)
¶ 35 IFS argues that it only had to provide financial information "as requested" and that upon request, quarterly information was due sixty days after the quarter ended and year-end information was due ninety days after year-end. However, "[w]hen construing the language of a contract, we give meaning to every word, avoiding constructions 'which render portions of a contract meaningless, inexplicable or mere surplusage.' " See Kasten v. Doral Dental USA , LLC , 2007 WI 76, ¶ 48, 301 Wis. 2d 598, 733 N.W.2d 300 (citation and one set of brackets omitted). Having considered the plain and ordinary words of the relevant lease terms de novo , see Betz , 355 Wis. 2d 301, ¶ 39, and giving meaning to every word, we conclude that the lease requires IFS to timely provide Heather with financial information when requested by Heather, in addition to annual and quarterly financial statements.
Breach of Obligation to Provide Financial Statements
¶ 36 The trial court made the following findings of fact relating to IFS's obligation to produce financial statements:
• Immediately after IFS had advised Heather of its intent to purchase Integrated on January 9, 2013, Heather requested financials from IFS.
• In numerous conversations with IFS, Heather requested certified financial statements as required by the lease.
• As of November 11, 2013, IFS had not produced its financial statements.
• Following an offer indicating AIC Ventures wanted to purchase the property, Heather again requested financials.
• Once again IFS failed to provide adequate financials.
• AIC canceled its offer as a result of not obtaining said financials.
• Other letters of interest were given over a period of time, but they were also canceled because of the failure of IFS to file all the requested financials.
• The failure to produce financials "blocked [Heather's] ability to sell the property."
• The lease also sets forth requirements, chief among them that the financials be certified. The financials provided by IFS stated they were a draft and were not certified.
• Corey Hogan, IFS's attorney, was aware of the obligations regarding financials-eleven months after IFS took assignment, he sent an email admitting the financials were still owed.
• It was not until after the cure period set by the notice of default that IFS attempted to provide financials and "even those were insufficient."
• The evidence clearly shows that Heather and Brennan Investment repeatedly asked for financials and IFS admitted it owed them, did not claim they were previously provided, and did not provide additional documents. The lease provides that financials "are to be submitted quarterly and annually and by request ."
¶ 37 The trial court further found that the emails of Michael Brennan, founder of Brennan Investment, "clearly set[ ] forth, as part of the first contact with IFS, that the financials were needed as part of any sale of the property and the property was being marketed for sale. IFS was on notice of the effect the refusal to provide financials would have on Heather." The trial court also found that Brennan and Scott McKibben, the property manager, were very credible witnesses. We conclude that the record supports the trial court's findings above.
¶ 38 Brennan testified that he had followed up with IFS to request its financial statements "many, many times." He further testified:
You know, it was so frequent that I don't remember all the times. But let me say that when they purchased the company, Sam Mandarino sent them a letter saying we want balance sheets, operating statements, financial statements.[8 ]... And we want a pro forma income statement, we want sources and uses. That was in January I believe of 2013.
...
And I subsequently followed up many times with the Coreys, Hagens, Hogans, whatever, Diane [Tiveron], and generally was disappointed with what we got.
Brennan further testified that he received a document from IFS on March 1, 2013, that was merely "a draft and it's not signed, it guts the whole provision." By email dated November 27, 2013, Brennan also asked IFS for the financial statements that he had been seeking since January 2013. As the trial court noted, a December 23, 2013 email from IFS's counsel, Hogan, even acknowledged that IFS needed to provide Brennan with the financial statements.
¶ 39 McKibben also testified that as of November 11, 2013, Heather had not received the IFS financial statements. McKibben also stated that as of the March 3, 2014 notice of default, fourteen months after IFS took assignment of the lease, IFS still had not provided its financial statements to Heather.
¶ 40 Additionally, Luis Medina, managing partner of AIC, testified in his deposition that the reason that the transaction to purchase the property was not consummated was due to the fact that AIC never received the IFS financials.
¶ 41 It was not until April 17, 2014, approximately two weeks after the end of the cure period, that IFS made its first attempt to cure the default. However, the financial statements that IFS provided did not comport with what the lease required. IFS merely provided a balance sheet that was not audited or certified. The transmittal letter from IFS's counsel acknowledged the deficiency, stating that "although the statement was prepared by an accountant, it is used for internal purposes only and has not been audited nor will it be."
¶ 42 We conclude that the record contains ample evidence upon which a reasonable person could conclude that IFS did not comply with the lease requirement that it provide the required financial statements upon request. We further conclude that the trial court's finding that IFS breached the lease by failing to provide adequate financial statements is supported by the record and, therefore, is not clearly erroneous.
The Breach Was Material
¶ 43 We also conclude that the trial court's finding that the breach was material is not clearly erroneous. The trial court found that IFS's failure to produce the financial information blocked Heather's ability to sell the property. The trial court specifically found that:
• Dickman testified that he procured a letter of intent from The Carey Group for $4.55 million on June 2, 2013, and also from Outlook Development Group for $4.7 million on March 15, 2013.
• Both Dickman and his buyers repeatedly asked for financials.
• McKibben testified that AIC wanted to buy the property and requested financials.
• As of January 6, 2014, no financials were received from IFS. AIC's offer was $5 million.
• AIC subsequently cancelled its offer. AIC closed on every other transaction that McKibben dealt with.
• Medina testified that the reason the transaction was not consummated was due to AIC never receiving IFS's financials.
¶ 44 We conclude the record supports the trial court's findings above. Dickman, who was involved in trying to sell the property, testified that there were four or five prospective sales of the property. He stated that those sales did not occur for the same two reasons-"we needed tenant financials and we needed the tenant to sign an estoppel."[9] He went on to explain that without either one of those documents, most buyers will not purchase a property. Dickman further testified that he has never been involved in a purchase without the tenant providing financials.
¶ 45 Moreover, although IFS asserts that failing to provide the financial information would not constitute a material breach, it does not develop its argument. In its opening brief, IFS references its alleged failure to produce necessary financial information and asserts that the allegation was not proven. In its reply brief, IFS merely states that the failure to produce financial information does not constitute a material breach, given the various other factors to be considered before a lease can be terminated. Other than its conclusory statements, IFS does not explain why the breach is not material.[10] Although IFS cites broad factors to be considered in determining the materiality of a breach, it does not provide the legal authority to support using those factors. It also cites numerous cases involving material breach of a contract. However, none involve a lease for commercial property. Given the substantial evidence in the record establishing that multiple offers to purchase the property that ranged from $4.55 million to $5.35 million were withdrawn as the result of IFS's failure to provide the financial statements to Heather, we conclude that the trial court's finding that the breach was material was not clearly erroneous.[11]
¶ 46 Based on the evidence supporting IFS's material breach of this lease provision alone, we would uphold the trial court's issuance of the writ of eviction.
C. Consolidation of the Actions for Trial Preserved the Eviction Remedy
¶ 47 IFS also contends that the eviction was not properly before the trial court because after the eviction action and IFS's large claims action were consolidated, IFS filed an amended complaint in its large claims action and Heather filed an answer and reasserted its counterclaims from its response to IFS's original large claims complaint. IFS asserts that in Heather's counterclaim to the amended complaint, Heather only asserted a claim for damages and did not assert a claim for eviction. It then argues that Wisconsin law provides that an amended pleading supplants the prior pleading. IFS further argues that the only operative pleadings, its amended complaint and Heather's answer and counterclaims to that amended complaint, do not include a claim for eviction.
¶ 48 Heather counters that the fact that IFS filed an amended complaint in its large claims action did not affect Heather's small claims eviction complaint. Heather argues that it filed its small claims eviction action first and IFS filed its large claims action second, and for the convenience of the courts the matters were consolidated.[12] Further, Heather asserts that it never relinquished its eviction complaint or agreed that the pleadings would be consolidated. IFS does not refute Heather's argument and, therefore, has conceded that Heather maintained its eviction action throughout the proceedings. See United Coop. v. Frontier FS Coop. , 2007 WI App 197, ¶ 39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).
¶ 49 Moreover, the trial court found that Heather continued to have its "right to eviction" because the small claims action "was a separate action," and was not "consumed by the large claim action." The trial court stated that "[t]hus the eviction action remained as an independent claim not affected by the counterclaim." In effect, the trial court concluded that the two actions had been consolidated for trial. See Wisconsin Brick & Block Corp. v. Vogel , 54 Wis. 2d 321, 325, 195 N.W.2d 664 (1972) (stating if the actions are consolidated for purposes of trial only, "the actions keep their separate existence"). We conclude that the record supports the trial court's determination that the consolidation was for trial and Heather's eviction action remained an independent claim in the case.
D. The Trial Court Found that Heather Gave Proper Notice for the Eviction
¶ 50 IFS also contends that Heather failed to provide the necessary notice to permit eviction. In its decision, the trial court held that Heather had given notice of default. With respect to the adequacy of the notice of default, that document, trial exhibit thirty-seven, is not part of the record before us. Therefore, consistent with our case law, we assume that it supports the trial court's determination that Heather gave sufficient notice of IFS's default and its claim to the right of possession. See Gaethke , 376 Wis. 2d 448, ¶ 36.
¶ 51 Based on the foregoing, we affirm the trial court's determination in favor of Heather as to the writ of eviction and damages for nonpayment of the management fee.
III. The Record and Applicable Law Support the Trial Court's Tortious Inference with Contract Ruling and Related Damage Award
¶ 52 IFS challenges the trial court's tortious inference with contract determinations on several grounds.
¶ 53 In addressing those contentions, we begin with the substantive law. Under Wisconsin law, establishing a claim for tortious interference with a present or prospective contractual relationship requires proof of the following five elements: "(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." Burbank Grease Servs., LLC v. Sokolowski , 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781 (citation omitted). Further, we have noted that "a claim of tortious interference with a prospective contractual relationship could also lead to recovery for 'loss of profits to be made out of the expected contracts.' " See State v. Johnson , 2005 WI App 201, ¶ 16, 287 Wis. 2d 381, 704 N.W.2d 625 (citation omitted).
A. Heather Had Prospective Contractual Relationships
¶ 54 First, IFS contends that Heather failed to prove the existence of a contract or a prospective contractual relationship that "appear[ed] likely to succeed," quoting Leonard Duckworth, Inc. v. Michael L. Field & Co. , 516 F.2d 952, 955 (5th Cir. 1975).[13] Contrary to IFS's argument, the trial court found that Heather had a contractual relationship with AIC.
¶ 55 The trial testimony, particularly that of real estate broker Dickman, establishes that AIC was a potential purchaser for the property that was likely to succeed. See Johnson , 287 Wis. 2d 381, ¶ 16. Medina's deposition testimony regarding AIC's February 2014 letter of intent on the property for $5 million also establishes its prospective contractual relationship with Heather. Medina recalled that Heather provided AIC the 2010 financial statements from Integrated. While IFS maintains that Heather possessed IFS's 2011, 2012, and 2013 financials, that contention is contrary to the trial court's finding which we upheld.
¶ 56 In challenging the existence of AIC's prospective contractual relationship with Heather, IFS identifies a number of possible factors that AIC could have invoked as a basis for cancelling a deal with Heather. In support of its argument, it cites part of Medina's deposition testimony. However, Medina's cited testimony discusses possible factors for cancellation in the abstract; his testimony is not specific as to the property. Furthermore, the trial court could properly rely on McKibben's uncontroverted testimony that AIC closed on every other deal in which he was involved. Thus, we conclude that the record supports the trial court's finding because its finding was not clearly erroneous.
B. IFS's Failure to Provide the Financial Statements Interfered with Heather's Prospective Contractual Relationships
¶ 57 Second, IFS maintains that the financial statements were not material to prospective buyers. To the extent that IFS is suggesting that Heather was required to prove that the financial statements were material, it does not cite any supporting legal authority and for that reason we could decline to address the argument. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶ 58 However, to be complete, we note that the trial court found that IFS's failure to provide those financial statements interfered with the potential contractual relationship. See Burbank Grease Servs. , 294 Wis. 2d 274, ¶ 44. That finding is supported by the record. Specifically, Dickman's testimony and that of Medina establish that the companies interested in buying the property wanted the financial statements and withdrew their offers when Heather did not provide the financials. McKibben and Brennan also testified that the financial statements were essential to any sale of the property moving forward. We conclude the evidence supports the trial court's finding that IFS's failure to provide the financial statements interfered with the prospective contractual relationships and, therefore, it is not clearly erroneous.
C. IFS's Interference Was Intentional
¶ 59 Third, IFS maintains that Heather offered no evidence that IFS intended to interfere with any potential sale, let alone knew of any potential sale. IFS asserts that it never knew of any potential sales. Citing Finch v. Southside Lincoln-Mercury, Inc. , 2004 WI App 110, ¶ 24, 274 Wis. 2d 719, 685 N.W.2d 154, IFS argues that the trial court's finding does not reflect the standard for showing intentional interference on a tortious interference with contract claim.
¶ 60 However, IFS's contention that Heather did not present evidence at trial that IFS knew of any potential sales is contradicted by the record. To the contrary, IFS's own president, Thomas Corey, testified at trial that he was aware of the offers. Corey stated, "[I received an email] from Michael Brennan, you know, giving me greetings and say[ing] that they have an offer on the building and they have to run it by me as per the lease."[14]
¶ 61 In addition, IFS's argument ignores the trial court's findings that an IFS email made it clear that IFS was "intentionally trying to frustrate Heather's rights under the lease" and that the only reason for "IFS's actions was [its] aim to buy the building itself for less than the other offers that were outstanding." Such findings reasonably support the conclusion that IFS's acts were intended to interfere with the prospective contracts. See id. Based on the foregoing, we conclude that the trial court's finding that the interference was intentional is not clearly erroneous.
D. The Evidence Supports a Causal Connection between the Interference and the Damages
¶ 62 IFS also asserts that the evidence does not establish a causal connection between the interference and the damage award. In awarding damages for tortious interference with a prospective contract, the trial court must have found that IFS's conduct was "a substantial factor"-that it had "a substantial influence in producing the damages claimed by [Heather]." See WIS JI - CIVIL 2780.
¶ 63 As discussed above, the trial court's finding is supported by the evidence showing that IFS's conduct was a substantial factor in Heather's claimed damages. The finding is supported by the testimony of several witnesses, including Medina who testified that AIC wanted IFS's financial statements and withdrew from the deal because the financial statements were not provided.
¶ 64 IFS further argues that Heather did not meet its burden of proof to show how it was damaged. It asserts that Heather still owns the property and can still sell the property. IFS then argues that because the trial court awarded damages in the amount of the lost profit from the sale of the property, $1.25 million dollars, when Heather does sell the property, it will get a windfall because it will be receiving that amount twice.
¶ 65 However, IFS fails to cite any authority in support of its argument. "Arguments unsupported by references to legal authority will not be considered." Pettit , 171 Wis. 2d at 646. Moreover, although IFS acknowledges that McKibben testified that the value of the property had declined after the breach by IFS, it merely asserts that his testimony lacks merit. McKibben testified that "I'd argue now that the value is less because we have a tank in the market and we also have a shorter lease term that's remaining." He went on to explain, "I say the value has gone down because now the market knows that we have an uncooperative tenant that's in default and in a lawsuit. And so I don't think we could get another offer on this property right now as it stands."
¶ 66 "[W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses." Cogswell , 87 Wis. 2d at 250. "When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." See id.
¶ 67 Based on the foregoing, we conclude that the trial court's holding in favor of Heather as to its tortious interference with contract claim is not clearly erroneous.[15]
IV. IFS's Breach of the Lease Provides the Basis for Awarding Attorney Fees to Heather
¶ 68 IFS also contends that because it did not breach its lease with Heather, the trial court erred in awarding attorney fees and costs under the lease.
¶ 69 We have upheld the trial court's determinations that IFS breached its lease by failing to pay the management fees as additional rent as required by the lease and by failing to provide financial statements. Based on our conclusion, IFS's challenge to the award of attorney fees lacks merit and is rejected.
V. The Record Supports the Trial Court's Determination that IFS Did Not Establish that Heather Breached the Lease
¶ 70 IFS also contends that the trial court's decision that Heather did not breach the lease should be reversed. However, we have upheld the trial court's determinations that IFS breached its contract by failing to provide financial statements and failing to pay the management fees as additional rent, as required by the lease. For that reason, we affirm the trial court's denial of IFS's breach of contract claim.
VI. The Trial Court Properly Dismissed IFS's Misrepresentation Claim and Concluded There is No Basis for Contract Reformation
¶ 71 IFS also argues that the trial court should have found that Heather misrepresented material facts to IFS regarding the option to purchase and that it erred in finding against IFS on its claims for strict responsibility misrepresentation and contract reformation against Heather. IFS's argument of approximately four pages is vague, discusses both Heather and Brennan Investment, and cites no case law in support of its position
¶ 72 The problem with IFS's strict misrepresentation argument is that its strict misrepresentation claim against Heather was dismissed by the trial court on October 28, 2015, prior to trial.[16] Thus, at the time of the trial, IFS had no misrepresentation claim pending before the trial court.[17] Because there was no misrepresentation claim pending against Heather at the time of the trial, the trial court could not have found Heather liable for strict responsibility misrepresentation. Thus, the issue of whether Heather is liable on the claim of strict responsibility misrepresentation is not before this court on appeal.
¶ 73 IFS recognized this distinction in its appellate docketing statement where it stated that one issue was "[whether] the [c]ourt err[ed] in dismissing IFS's misrepresentation claims against Heather upon Heather's motion to dismiss." However, IFS does not make any argument on the issue in its appellate briefs. The trial court dismissed the claim on the grounds that the economic loss doctrine barred the claim. On appeal IFS does not mention, let alone argue, that the trial court erred in dismissing its strict responsibility misrepresentation claim on the grounds that it was barred by the economic loss doctrine. Therefore, we conclude that IFS has abandoned this issue.
¶ 74 Additionally, IFS only argues that the trial court should have found Heather, not Brennan Investment, liable for the strict misrepresentation claim. Therefore, we conclude that IFS abandoned its claim against Brennan Investment on this issue. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).[18]
¶ 75 Addressing IFS's contract reformation claim, the trial court found that there was no basis for contract reformation because IFS had submitted "no credible evidence" that "there was a mistake as to which was the valid lease." The trial court further found that any mistake as to which lease was valid was due to IFS's negligence. These determinations are controlling. See Adams Outdoor , 294 Wis. 2d 441, ¶ 27 (stating, "[w]here there is conflicting testimony the fact finder is the ultimate arbiter of credibility").
¶ 76 Thus, IFS has not presented any basis for overturning the trial court's disposition of its misrepresentation or contract reformation claims against Heather and has abandoned any misrepresentation claims against Brennan Investment.
VII. IFS's Declaratory Judgment Claim of a Right to Purchase
¶ 77 IFS asserts that the trial court improperly granted summary judgment to Heather dismissing IFS's claim that it had a right to purchase the property. It argues that the trial court improperly excluded, as being untimely filed, IFS's affidavit and supplemental brief in opposition to the motion. It argues that its supplemental opposition papers presented credible evidence to raise a material issue of fact about the right to purchase.
¶ 78 Heather counters that the summary judgment issue is moot, in essence, because IFS eliminated the declaratory judgment claim from the case by filing an amended complaint that did not include or otherwise incorporate a claim for declaratory judgment that IFS had the right to purchase the property, and that IFS filed the amended complaint after the trial court dismissed IFS's declaratory judgment claim. Citing supporting case law, Heather asserts that IFS pled over the issue and, thereby, "waived" the declaratory judgment claim.
¶ 79 IFS's reply does not refute or otherwise respond to Heather's position. Therefore, we deem IFS to have conceded the issue. See United Coop. , 304 Wis. 2d 750, ¶ 39.
¶ 80 Moreover, we note that even though the trial court granted summary judgment, it allowed testimony regarding the issue of the right to purchase during the trial and found that "[t]here is only one signed lease" and "there is no credible evidence submitted by IFS that there was a mistake as to which was the valid lease." The trial court affirmed its decision granting summary judgment on the issue based on the evidence introduced during the trial-in effect, IFS received a trial on the issue.
¶ 81 We conclude that by pleading over the issue, IFS thereby waived the declaratory judgment claim. Additionally, we conclude that the record shows that during the trial, the trial court considered IFS's claim that it had a right to purchase the property and found the lease provided that IFS had a right of first refusal-not a right to purchase the property. We further conclude that the record supports the trial court's finding and, therefore, the finding is not clearly erroneous.
CONCLUSION
¶ 82 For the reasons stated above, we affirm the trial court's order.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

Heather and Brennan Investments filed a joint brief. Therefore, we refer to them jointly as Heather when discussing their arguments on appeal.

IFS asserted that the lease provided that IFS had a right to purchase the property for $4.15 million.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The trial court's decision and the parties' appellate briefs rely on many exhibits that Heather offered at trial and that the trial court admitted into evidence. With the sole exception of the lease for the property, Heather's exhibits are missing from the record. As required, we assume that the missing exhibits support the trial court's decision. See Gaethke v. Pozder , 2017 WI App 38, ¶ 36, 376 Wis. 2d 448, 899 N.W.2d 381. See also State Bank of Hartland v. Arndt , 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986).

Heather asserts that this court should reject IFS's argument that the claimed breaches are not material because it was not raised at the trial court. However, in its written summation, IFS argued that neither the disputed CAM charges nor the allegations regarding disclosure of financial information amounted to a material breach. Thus, we conclude IFS has not forfeited the argument on appeal.

IFS does not dispute that it did not pay the management fees-it asserts that the payments are not required under the lease.

We assume as required that missing trial exhibits twenty and fifty-six support the trial court's findings of fact. See Gaethke , 376 Wis. 2d 448, ¶ 36.

This testimony is corroborated by a January 9, 2013 email from Mandarino to counsel for IFS requesting 2012 financial statements for IFS and pro forma financial statements.

An estoppel is a document that a tenant signs stating that the lease is true and correct.

See State v. Pettit , 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that to address the appellant's arguments, we would first have to develop them but declining to address them because "[w]e cannot serve both as advocate and judge").

Further, our analysis of Decade 80-I, Ltd. ex rel. Keierleber v. PDQ Food Stores, Inc. of Madison , 226 Wis. 2d 42, 43, 593 N.W.2d 94 (Ct. App. 1999), above applies to IFS's failure to provide financial statements and supports our conclusion that the breach was material.

In its brief addressing this argument, IFS asserted that it filed its action first which, as noted earlier, is mistaken.

Heather attempts to distinguish Leonard Duckworth, Inc. v. Michael L. Field & Co. , 516 F.2d 952, 955 (5th Cir. 1975), as a nonbinding decision of the Court of Appeals for the Fifth Circuit applying Texas law. However, since we previously relied upon the case in State v. Johnson , 2005 WI App 201, ¶ 20, 287 Wis. 2d 381, 704 N.W.2d 625, we do not adopt that line of reasoning.

We further note that IFS's reply brief does not refute or otherwise address Heather's factual showing that it was aware of the potential transactions. Thus, IFS has conceded the argument that the interference could not be intentional because it lacked notice of the potential transactions. See United Coop. v. Frontier FS Coop. , 2007 WI App 197, ¶ 39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).

We earlier found that IFS breached the terms of the lease and upheld the trial court's award of additional rent due. The trial court also awarded Heather $1.25 million for its breach of contract claim for IFS's failure to provide financial statements. We also affirm the trial court's award of damages on Heather's breach of contact claim. The trial court noted that the award on the breach of contract claim was in the alternative to the award for the tortious inference with contract claim so there would be no double recovery.

As an aside, in its decision on Heather's motion to dismiss IFS's misrepresentation claims, the trial court noted that IFS argued that its claim for misrepresentation was based upon fraud by Heather in accepting the assignment of the lease. However, the record reflects that IFS never sought Heather's acceptance of the assignment asserting that under an exception in the lease, IFS did not need Heather's acceptance to make the assignment valid-Heather had no choice or discretion in the assignment. IFS's own argument to the trial court defeats its argument on appeal.

Heather asserts that this argument is frivolous and that if this court agrees, "sanctions should be taxed against IFS's counsel." However, this conclusory assertion is not accompanied by any citation to legal authority or argument and, therefore, we decline to further consider Heather's assertion. See Pettit , 171 Wis. 2d at 646-47.

IFS also fails to make any argument regarding its negligent misrepresentation claim against Brennan Investment and, thus, is also deemed to have abandoned the issue. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).